[No. 54509–0. En Banc. July 15, 1988.]

MARIAN A. GLIDDEN, ET AL, *Plaintiffs*, v. THE MUNICIPAL AUTHORITY OF THE CITY OF TACOMA, *Appellant*, OLD STONE BANK, ET AL, *Respondents.*

342

*Steven L. Larson,* for appellant.

*Preston, Thorgrimson, Ellis & Holman,* by *John A. Gose* and *Desmond L. Brown,* for respondent Old Stone Bank.

DURHAM, J.—In October 1986, Patricia Rourke, as trustee under a deed of trust, conducted a nonjudicial foreclosure sale of property in Pierce County. Appellant Municipal Authority of the City of Tacoma (Municipal Authority) was the successful bidder at the sale and received from Rourke a trustee's deed containing recitals that notice of the sale had been sent "to all persons entitled thereto", and that the sale complied in all respects to the notice requirements of Washington's deeds of trust act, RCW 61.24.

The issue presented for decision is what protection these recitals, and the "conclusive evidence" standard of RCW 61.24.040(7), afford Municipal Authority against a claim to the property asserted by respondent Old Stone Bank

(OSB), a junior lienor who was not notified of the sale in the manner required by the deeds of trust act. Municipal Authority asserts that because it is a bona fide purchaser for value (BFP), RCW 61.24.040(7) vests it with clear title. OSB contends that because Municipal Authority is itself a junior lienor, the "conclusive evidence" rule of RCW 61.24-.040(7) does not protect it from challenges based on flawed foreclosure procedures. OSB also asserts that Municipal Authority does not qualify as a BFP.

We hold that the "conclusive evidence" rule of RCW 61.24.040(7) applies to junior lienholders in the same manner as to disinterested purchasers. We find also that, in the posture this case comes to us, it cannot be said that Municipal Authority is not a BFP as a matter of law. Thus, we reverse the trial court's order of summary judgment in favor of OSB and remand the case for further proceedings.

## I

The property in dispute, by means of separate deeds of trust, secured debts owed by the Mount Bay Corporation to plaintiff Marian Glidden ($37,640.16), respondent OSB ($88,500), and appellant Municipal Authority ($38,605). Glidden is the senior lienholder, with OSB and Municipal Authority, respectively, occupying the second– and third–order lienholder positions. There are at least two other junior lienors.

When Mount Bay defaulted on its debt to Glidden in 1986, Rourke, as trustee, initiated foreclosure proceedings pursuant to the power of sale provision in the Glidden deed of trust. In May 1986, Rourke notified Mount Bay that it was in default. On June 5, Rourke served on Mount Bay notice that the trust property would be sold at public auction on October 17, 1986, if Mount Bay's default was not cured before October 7. Rourke recorded this notice with the county auditor and posted it on the property but did not notify any of the junior lienholders about the impending foreclosure sale as required by RCW 61.24.040(1)(b).

Municipal Authority learned of the sale from the posted notice, and called Rourke on June 16 to request copies of the notice and of her foreclosure report. Between June 16 and October 17, the scheduled date of Rourke's sale, Municipal Authority and Rourke communicated on several occasions. On at least two of these occasions, Bryan Chushcoff, an attorney for Municipal Authority, asked Rourke if she had given notice of the planned foreclosure sale to junior encumbrancers. Rourke responded each time by saying: "Of course, Bryan, I always do." On the day of the sale, another Municipal Authority official asked Rourke if she had notified junior lienholders. Again she said that she had.

While Rourke's foreclosure plans were going forward, OSB set in motion its own foreclosure of the property. OSB initiated foreclosure proceedings in June and scheduled a sale for December. Rourke first learned of OSB's foreclosure on June 20 in a phone conversation with OSB's attorney and received further notice of it in September, when an updated title report disclosed the recording of a notice of trustee's sale under OSB's deed of trust. Municipal Authority learned in September of OSB's plans to foreclose when it received a copy of this notice of trustee's sale.

Municipal Authority and Glidden were the only bidders at Rourke's sale. Glidden bid $37,640.19, the amount of Mount Bay's indebtedness to her. Municipal Authority bid $37,845. Rourke accepted Municipal Authority's bid.

Immediately after the sale, Chushcoff appeared at Rourke's law office to tender the purchase price. He received a receipt for the payment, and returned later in the day to pick up the trustee's deed. During this second visit, Chushcoff and Rourke speculated as to why OSB had not entered a bid. Terry McCarthy, a partner in Rourke's firm, happened into the conversation and asked Rourke if she had served OSB with notice. Rourke asserted that she had and told McCarthy and Chushcoff that OSB representatives had indicated to her that they knew about the sale.

The trustee's deed Municipal Authority received contained the following recitals:

7. The Trustee . . . in accordance with law, caused copies of the statutory "Notice of Trustee's Sale" to be transmitted by mail to all persons entitled thereto and either posted or served prior to ninety days before the sale . . .

. . .

9. All legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in Chapter 61.24 RCW.

On October 29, Rourke learned from OSB's title company that OSB had not received notice of the sale and after checking her records realized that other junior lienholders also had not received proper notice. Rourke immediately called Municipal Authority and asked that the sale be undone. After some weeks of discussions, Rourke tendered to Municipal Authority its purchase price and a quitclaim deed. Municipal Authority refused the tender.

Glidden and Rourke commenced this action in December 1986, seeking a judgment declaring void the October 17 sale and the trustee's deed Rourke issued to Municipal Authority following the sale on the basis that Rourke had failed to serve proper notice on the junior lienholders. In its answer, Municipal Authority asserted that as a BFP it acquired clear title to the sale property pursuant to RCW 61.24-.040(7). Municipal Authority asked that title be quieted in its favor, or in the alternative that Rourke and her law firm be held liable for damages in the amount of the fair market value of the property, at a minimum of $146,000.

OSB, impleaded by Municipal Authority as a third party defendant, answered Municipal Authority's claims by contending that as a junior lienor it was entitled to, but did not receive, statutory notice of the foreclosure sale, and that Rourke's failure to comply with statutory notice requirements renders the sale void as to OSB's interests in the property. Had it known of the sale, OSB asserted, it would have cured Mount Bay's default and thus preserved its interests. OSB also refuted Municipal Authority's claim

to being a BFP and requested a ruling that Rourke's sale is void and that OSB's interests in the property remain valid.

On OSB's motion for summary judgment, the trial court ruled OSB's second priority lien to be "a valid, existing, enforceable lien" notwithstanding Municipal Authority's purchase because OSB "was an omitted junior lienor in that it was not notified of the sale[.]" Thus, the court held, OSB "may proceed to foreclose its Deed of Trust or exercise any rights under the Old Stone Deed of Trust and promissory note secured thereby."[1] The trial court made no finding on Municipal Authority's status as a BFP. We granted Municipal Authority's petition for direct review.

## II

Washington's deeds of trust act, RCW 61.24, authorizes nonjudicial foreclosures of deeds of trust as a time–efficient alternative to judicial mortgage foreclosure proceedings. *See* Gose, *The Trust Deed Act in Washington,* 41 Wash. L. Rev. 94 (1966). We have previously identified three principal goals of the deed of trust private sale program:

First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.

(Citation omitted.) *Cox v. Helenius,* 103 Wn.2d 383, 387, 693 P.2d 683 (1985).

As this case well illustrates, these goals "are often difficult to reconcile." Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington,* 59 Wash. L. Rev. 323, 330 (1984). Permitting "omitted junior lienors" such as OSB to retain collateral interests in land that has been sold at auction, while advancing the second objective, would undermine the third. Conversely,

---

[1]The trial court also denied a summary judgment motion brought by Glidden and Rourke, and, at OSB's request, dismissed claims OSB had asserted against Rourke for negligence in conducting the sale. Neither of these judgments is in issue here.

preventing such omitted parties from challenging nonjudicial foreclosures in order to protect the title obtained by a sale purchaser such as Municipal Authority would favor the third objective over the second.

We would find the proper balance of objectives difficult to achieve in this case if it were not for RCW 61.24.040(7). That provision requires the foreclosing trustee to issue to the foreclosure sale purchaser a deed which:

> shall recite the facts showing that the sale was conducted in compliance with all of the requirements of this chapter and of the deed of trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value[.]

The deed Rourke issued to Municipal Authority contains recitals that notice was properly served "to all persons entitled thereto", "as provided in Chapter 61.24 RCW." Thus, if Municipal Authority is a BFP, RCW 61.24.040(7) renders these recitals conclusive as to the correctness of the foreclosure sale procedures and Municipal Authority would be entitled to clear title.[2] If Municipal Authority is not a BFP, however, the deed recitals would be only prima facie evidence that the sale was conducted properly, subject to rebuttal by omitted junior lienholders seeking preservation of their interests.[3] *See Steward v. Good,* 51 Wn. App. 509, 512, 754 P.2d 150 (1988); Comment, 59 Wash. L. Rev. at 339; Comment, *In Deed an Alternative Security Device: The Nebraska Trust Deeds Act,* 64 Neb. L. Rev. 92, 127–28 (1985).

---

[2]Rourke's failure to serve statutory notice on junior lienholders is the only asserted flaw in the foreclosure.

[3]Ordinarily, a nonjudicial foreclosure sale would extinguish all junior liens. *See* RCW 61.24.050. As the trial court correctly observed, however, the "omitted junior lienor" rule of mortgage law may operate in the nonjudicial foreclosure context to preserve the interest of a junior lienor who has not had an opportunity to contest foreclosure or participate at the foreclosure sale. *See* RCW 61.24.020 (deeds of trust are "subject to all laws relating to mortgages on real property", except when the act provides otherwise).

In the posture in which this case comes to us, therefore, the issue we must decide is this: Viewed in a light most favorable to the nonmoving party (Municipal Authority), does the evidence on which the trial court based its ruling establish that Municipal Authority is not a BFP as a matter of law?

## III

Before considering how the evidence bears out OSB's claim that Municipal Authority is not a BFP, we address two legal arguments advanced by OSB, which, if correct, would make resolution of the BFP issue unnecessary. First, OSB contends that, as an "omitted junior lienor", it is entitled to preservation of its interest regardless of whether Municipal Authority is a BFP. The trial court apparently accepted this argument, concluding, without addressing the BFP question:

1. That at the Trustee's sale, Old Stone Bank was an omitted junior lienor in that it was not notified of the sale;
2. As an omitted junior lienor, Old Stone Bank's lien was not affected by the Trustee's sale[.]

■ We cannot agree that OSB's interest may be sustained without consideration of Municipal Authority's status as a BFP. While lack of notice undeniably prejudices omitted junior lienors whose interests are extinguished by foreclosure, *see* RCW 61.24.050, the Legislature has determined that on balance the rights of the bona fide purchaser are paramount. See earlier discussion of RCW 61.24.040(7). Postsale challenges are thus improper; the omitted lienors must seek other remedies. *See* Comment, 59 Wash. L. Rev. at 337–40; Comment, 64 Neb. L. Rev. at 122.

OSB argues also that RCW 61.24.040(7) cannot protect Municipal Authority even if Municipal Authority is a BFP because the provision does not apply to "lienholder insiders". In support of this argument, OSB notes that "*conclusive recitals*" provisions such as that contained in RCW 61.24.040(7) have been interpreted as affording no

protection to trust beneficiaries who purchase the trust property at a procedurally flawed nonjudicial foreclosure sale. *See Johnson v. Johnson,* 25 Wn.2d 797, 172 P.2d 243 (1946) (applying California law to "conclusive recitals" clause contained in deed of trust). Such recitals should also afford no protection to other junior lienholders, OSB asserts.

■ We find this argument to be without merit. The reason a trust beneficiary might be denied the benefits of "conclusive recitals" clauses is that the beneficiary is in a position to conduct the sale in a manner calculated to serve his own interests. *See Johnson,* at 804 ("conclusive recitals" clause should not protect "the beneficiary of the trust who purchased at the sale brought about by it"); Comment, 64 Neb. L. Rev. at 128 n.150. But nothing inherent to the relationship between a junior lienholder and the foreclosing party, and certainly nothing that has been established about Municipal Authority's relationship to Glidden or Rourke here, enables the junior lienholder to rig a sale to its benefit. Thus, there is no cause to deny lienholders, as a class, the protection the "conclusive evidence" standard of RCW 61.24.040(7) affords.

We are persuaded against OSB's proposed "lienholder insider" exception to the recitals provision in RCW 61.24-.040(7) also because such an exception is unnecessary to the proper operation of the statute. Textually, RCW 61.24-.040(7) does not distinguish lienholders from other purchasers. The only distinction that is drawn is that between purchasers who are BFP's and those who are not, and this we find sufficient to protect third parties from prejudice caused by procedural flaws in foreclosures. A lienholder/purchaser who acts in reliance on flawed sale procedures would not be a BFP, and thus would not be insulated by the "conclusive evidence" rule.[4]

---

[4]Significantly, scholarly discussions of conclusive recitals provisions make no mention of the need for a "lienholder insiders" exception. *See* G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.20, at 537–39 (2d ed. 1985); Comment,

A broad brush exclusion of "lienholder insiders" is not only unjustified, it appears to be unwise. By limiting the availability of postsale challenges to foreclosure, the "conclusive evidence" rule of RCW 61.24.040(7) plays a critical role in removing the disincentives to investment that had existed under prior mortgage foreclosure laws. *See* Gose, 41 Wash. L. Rev. at 95–96. The promise of clear title helps attract purchasers to land sale auctions, and the swiftness and certainty of the nonjudicial foreclosure process encourages land–backed financing by assuring lenders a reliable method for realizing on their security interests. We would do almost certain damage to an essential aspect of the deed of trust program, therefore, if we were to deny postsale protections to what is likely the broadest class of sale participants—the junior lienholders. *See Rosenberg v. Smidt,* 727 P.2d 778, 787 (Alaska 1986) (Moore, J., dissenting in part).

### IV

We turn now to the bona fide purchaser question. A BFP is one who purchases property without knowledge, actual or constructive, of competing interests. *Miebach v. Colasurdo,* 102 Wn.2d 170, 175–76, 685 P.2d 1074 (1984). At issue here is Municipal Authority's knowledge that OSB had not received notice of Rourke's sale. OSB does not contend that Municipal Authority had actual knowledge of Rourke's failure to notify OSB, but argues that Municipal Authority should be charged with constructive knowledge of Rourke's error.

Two questions of fact must be answered to respond to OSB's contention. First, did the events surrounding Rourke's sale create in Municipal Authority a duty to inquire into possible flaws in the foreclosure process? Second, if Municipal Authority did have such a duty, did it

---

*Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington,* 59 Wash. L. Rev. 323, 339 (1984); Comment, *In Deed An Alternative Security Device: The Nebraska Trust Deeds Act,* 64 Neb. L. Rev. 92, 127–28 (1985).

satisfy that duty? *See generally Miebach,* at 175–77 (discussing "inquiry notice"). Only the second of these questions is at issue here, since Municipal Authority concedes that "the circumstances surrounding the Glidden sale were such as to require it to make inquiry."

■ The question of whether Municipal Authority satisfied its duty of inquiry cannot properly be answered on summary judgment, however, because on this question, "the evidence is such that different inferences might reasonably be drawn therefrom". *Hudesman v. Foley,* 73 Wn.2d 880, 889, 441 P.2d 532 (1968) (quoting 92 C.J.S. *Vendor and Purchaser* § 374 (1955)); *see Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 423 P.2d 926 (1967). That Municipal Authority had not received proper notice of Rourke's sale; that it knew about OSB's planned December sale; that junior lienholders did not attend the sale—these facts might suggest that Municipal Authority could not reasonably rely on Rourke's claim that she "always" notifies junior lienholders. On the other hand, knowing as much as Municipal Authority, Rourke persistently stood by her claims that she had notified OSB.

More also needs to be known about the communications between Municipal Authority and Rourke before it can be said with certainty that Municipal Authority acted unreasonably in relying on her. For example, did Rourke have a reputation for carelessness in performing her duties as trustee? Was she known to respond hastily and incorrectly to inquiries put to her? What more can be determined about the timing and substance of Rourke's assurances that would reflect on the reasonableness of Municipal Authority's reliance? From a fuller appreciation of the circumstances of Rourke's interactions with Municipal Authority, the trial court will better be able to determine the reasonableness of Municipal Authority's reliance.

Urging us not to worry about this unresolved factual question, OSB offers the following principle of law: "Reasonable inquiry means inquiry of the party possessing the potential claim against the property." While obviously of

value to OSB here, hard and fast rules of this sort are not generally recommended for questions of reasonableness. *Cf.* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 35 (5th ed. 1984) (disapproving rigid rules of conduct in tort law where reasonableness is in issue). What Municipal Authority reasonably should have done, and what a future foreclosure sale purchaser reasonably should do to prevent challenges to its title, can be determined only from the particular circumstances that obtain in each case.[5]

We cannot accept OSB's proffered rule in any event because we find it to be unsupportable as a matter of law. The only case OSB cites for the rule is *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 457 P.2d 600 (1969), in which a mortgagee was charged with constructive knowledge of a fraud perpetrated by the mortgagor in acquiring the mortgaged property. The basis for the imputation of constructive knowledge was the mortgagee's actual knowledge of the mortgagor's bad reputation and prior illegal conduct in similar transactions.

> This knowledge apparently prompted [the mortgagee] to take unusual precautions to protect itself, and should have prompted a reasonable investigation of [the mortgagor's] purchase of the property. A simple inquiry of [the previous owner] would have revealed the fraud in procuring the conveyance. The record amply supports the [trial] court's finding that plaintiff unreasonably failed to make this investigation and was thus charged with constructive notice of the fraud . . .

*Enterprise Timber,* at 483.

OSB would read this language to mean that inquiry concerning other interests in property *must* be made of the interested parties themselves. We do not believe the holding of *Enterprise Timber* is that broad. The *Enterprise*

---

[5]For this reason, we have declined to hold that Municipal Authority's reliance on Rourke's assurances was per se reasonable, though, in light of the special degree of care that is expected of trustees, *see Cox v. Helenius,* 103 Wn.2d 383, 389, 693 P.2d 683 (1985), such a holding might not be entirely inappropriate.

*Timber* opinion merely observes that such inquiry would have disclosed a fraud in the transaction there at issue; at most, it suggests that inquiry of the previous owner was necessary under the circumstances that obtained in that case because whatever assurances the mortgagor might have made concerning the validity of his title were patently unreliable. Because there is no evidence that Rourke had a reputation for failing to give notice or being untruthful,[6] this case is distinguishable.

The order on summary judgment is reversed and the case remanded for further proceedings.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

After modification, further reconsideration denied November 29, 1988.

---

[6]OSB's wry remark that Rourke was "the one person who was certain to give the wrong answer" has no basis in the record.