

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 05 2013

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Dec 5, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TAMARA FRIZZELL, | ) | No. 87927-3 |
| Respondent, | ) ) ) | |
| v. | ) | En Banc |
| BARBARA MURRAY and GREGORY MURRAY, husband and wife, d/b/a SOUND BROKERS, | ) ) ) ) ) | |
| Petitioners. | ) | Filed ___ DEC 05 2013 ___ |

MADSEN, C.J.— Respondent Tamara Frizzell received a $100,000 loan from petitioner Barbara Murray, secured by a deed of trust on Frizzell's home. Frizzell defaulted and a nonjudicial foreclosure sale was set. Before the sale, Frizzell filed an action against Barbara and her husband Gregory Murray, alleging several claims, as well as a motion for an order to enjoin the sale. A judge stayed the sale, conditioned upon Frizzell's payment of $25,000 into the court registry by the following morning. Frizzell failed to do so and the sale took place. The trial court then dismissed Frizzell's claims on summary judgment, stating her failure to enjoin the sale resulted in a waiver of her claims. The Court of Appeals reversed and remanded, determining it would be

inequitable to conclude Frizzell waived her claims. We hold that Frizzell waived her claims as to the foreclosure sale and remand her other claims to the trial court for consideration under RCW 61.24.127.

## FACTS AND PROCEDURAL HISTORY

In 2008, Tamara Frizzell obtained a $100,000 loan from Barbara Murray that Gregory Murray brokered.[1] At the time of the loan, Gregory Murray maintained a license to operate as a mortgage broker, operating as Sound Brokers.

Prior to obtaining the loan, Frizzell gave her live-in friend, Douglas Baer, power of attorney. He acted on her behalf and contacted the Murrays to obtain the loan after seeing an ad in the *Tacoma News Tribune* offering loans for real estate. According to Baer, Frizzell originally wanted a loan of $20,000 in order to pay past-due bills, but then increased the amount of the loan due to a better interest rate on a larger loan. Baer claims he told the Murrays that Frizzell was poor when it came to financial matters and was "like a child in that regard." Clerk's Papers at 146. This is disputed by the Murrays, who note that Frizzell executed the power of attorney that gave Baer the authority to act in real estate and business transactions, among other things. Despite the power of attorney, however, the Murrays insisted that Frizzell sign the loan documents on her own behalf.

The Murrays explained to Baer that the loan could be offered only for business purposes. Baer stated that Frizzell had no business to operate and he suggested, presumably to Frizzell, that he start a wheelchair business because of the 40 to 50

---

[1] Barbara Murray entered into the loan while single, under the name of Barbara Roszyk. She subsequently married Gregory Murray.

wheelchairs and scooters he had at her house. There were no business plans, projected income, or expense statements, and Baer claims that the Murrays asked few questions about the business. Frizzell signed a declaration concerning the purpose and use of the loan, which states that the loan would not be used for personal or household use, but for a "wheelchair & scooter business." *Id.* at 286.

Under the terms of the loan, Frizzell would receive about $88,000, which represents $100,000 minus $12,000 in fees. Monthly payments were set at $1,000, with full repayment due in three years. The loan application shows Frizzell's monthly salary as $1,600. This loan was secured by a deed of trust on her property.

After only three payments, Frizzell defaulted. Barbara Murray initiated the process of foreclosing on Frizzell's home through a nonjudicial sale. Prior to the sale, Frizzell filed a complaint against the Murrays alleging claims of common law and statutory fraud in the course of a residential mortgage loan, civil conspiracy, unconscionability, Consumer Protection Act (CPA) (ch. 19.86 RCW) claims, that the loan was actually a de facto sale, that the loan was for noncommercial use, that Gregory Murray lacked a real estate license, and that the underlying deed of trust was invalid because of her lack of capacity to contract. She supported her capacity claim with a doctor's note stating that she has severe memory defects "suggestive of an incipient dementia." *Id.* at 197. In her complaint, she sought damages and an injunction barring enforcement of the deed of trust through the foreclosure sale.

Frizzell also filed a separate motion to enjoin the trustee sale. One day before the sale, a judge granted Frizzell's motion conditioned upon Frizzell's payment into the court registry of $15,000 representing arrearages on the deed of trust and $10,000 representing a bond, both due the next morning. Frizzell did not make the payments and the sale took place. Barbara Murray purchased the home.

The trial court then considered the claims in Frizzell's complaint and granted the Murrays' request for summary judgment as to all claims. The trial court stated that summary judgment was granted "based on the Plaintiff's failure to obtain pre-sale injunctive relief. Accordingly, all of Plaintiff's claims are denied." *Id.* at 305. The Court of Appeals reversed, determining Frizzell's failure to obtain presale relief did not waive her claims because it would be inequitable to assume she waived her right in light of the facts of her case. *Frizzell v. Murray,* 170 Wn. App. 420, 430, 283 P.3d 1139 (2012). The Murrays sought review by this court. *Frizzell v. Murray,* 176 Wn.2d 1011, 297 P.3d 707 (2013).

## ANALYSIS

We must decide whether obtaining an order to enjoin a nonjudicial foreclosure sale conditioned upon remittance of payment to the court and failing to make such payment, results in a waiver of claims under the RCW 61.24.040(1)(f)(IX) waiver provision. If so, we must then determine which claims are affected by the waiver rule and whether any claims are exempted by other statutory provisions. The trial court below granted the Murrays' motion for summary judgment based on Frizzell's failure to obtain

presale injunctive relief. We review summary judgment rulings de novo. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013) (citing *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Herring v. Texaco, Inc.*, 161 Wn.2d 189, 194, 165 P.3d 4 (2007)).

1. <u>Waiver resulting from failure to restrain the sale</u>

In *Plein v. Lackey*, 149 Wn.2d 214, 229, 67 P.3d 1061 (2003), we held that failure to obtain a preliminary injunction or restraining order barring a nonjudicial foreclosure sale waived defenses to the sale. We stated that under the waiver provision set forth in RCW 61.24.040(1)(f)(IX), a waiver of a postsale contest occurs when "a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." *Id.* at 227 (citing *Country Express Stores, Inc. v. Sims*, 87 Wn. App. 741, 751, 943 P.2d 374 (1997)). We determined that the plaintiff had waived his right to contest the foreclosure because, although he sought a permanent injunction and disputed whether there was a default, he "failed to obtain a preliminary injunction or other order restraining the foreclosure sale." *Id.* at 229.

We conclude, as in *Plein*, that Frizzell waived her right to contest the nonjudicial foreclosure sale. First, she received notice of the right to enjoin the sale and she filed a motion to enjoin the sale. Although she argues that her capacity to contract affects

5

whether she understood the notice, she fails to explain why she sought an injunction barring enforcement of the deed of trust through the foreclosure sale and filed a separate motion to enjoin the sale if she did not have knowledge that a foreclosure would occur. In addition, she also had knowledge of a defense to the foreclosure prior to the sale, demonstrated by the claims made in her original complaint. Finally, Frizzell did not obtain an order restraining the sale, just as the plaintiff in *Plein* failed to do. Although she brought an action to obtain a court order, the order was conditioned on a payment to the court that she failed to make. Frizzell did not request reconsideration, though she contends the judge issuing the order would be unlikely to change her mind. Frizzell also did not appeal the order, arguing she would have had to post security to supersede the judgment and she did not have sufficient funds. But consciously choosing not to pursue all remedies is not an excuse, and posting security is a clear statutory requirement.

Frizzell argues, though, that *Plein* is inapplicable here because she actually obtained an order restraining the sale, unlike in *Plein* and *Brown v. Household Realty Corp.,* 146 Wn. App. 157, 171, 189 P.3d 223 (2008), where the borrowers waived their claims by failing to restrain the sale and filing a lawsuit two years after the sale. The Court of Appeals here concluded that Frizzell had actually obtained a restraining order but simply did not restrain the sale because the order was conditioned upon payment to the court. *Frizzell,* 170 Wn. App. at 428. However, RCW 61.24.130(1) provides that "[t]he court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation

secured by the deed of trust if the deed of trust was not being foreclosed." *See also* RCW 7.40.080; CR 65(c).[2] The statute is clear that the order is conditional upon payment, which Frizzell failed to make. Frizzell received notice and had the opportunity to prevent foreclosure, but through her actions she failed to meet the clear statutory requirements under RCW 61.24.130 and did not actually obtain an order enjoining the sale. To allow a borrower to ignore the conditions for an injunction would render aspects of the waiver provision and injunction statute meaningless.

In a rather unusual argument, Frizzell also argues that *Plein* is inapplicable because it is dicta. It appears she is really trying to distinguish *Plein.* However, both in *Plein* and here, the borrowers failed to obtain an order restraining the sale in a nonjudicial foreclosure. *Plein* is factually and legally similar to the case, making *Plein* relevant. It is not "dicta."

Finally, Frizzell argues that it would be inequitable to apply the waiver provision, relying on *Albice v. Premier Mortgage Services of Washington, Inc.*, 174 Wn.2d 560, 569, 276 P.3d 1277 (2012). Following *Plein*, this court considered in *Albice* whether the respondent waived claims relating to the sale where presale remedies were not pursued. *Id.* We distinguished *Plein* and held there was no waiver. First, the borrowers did not know of the alleged breach in time to restrain the sale, unlike the borrower in *Plein*, based

---

[2] "No injunction or restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order." RCW 7.40.080. "Except as otherwise provided by statute, no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." CR 65(c).

on the conduct of the lenders in continuing to accept late payments and because no notice was received. *Id.* at 571-72. Also, the borrowers had no grounds to challenge the underlying debt because they had entered into a "Forbearance Agreement." *Id.* at 571. Finally, the sale took place outside the statutory time period. *Id.* at 568. There was no indication that the parties were "'sleeping on' their rights." *Id.* at 572. Essentially, the court declined to apply waiver because the lender failed to comply with the statutes. Here, in contrast, Frizzell failed to comply with the conditions necessary to enjoin the sale. Her failure was not due to the actions of a third party. It is not inequitable to conclude that Frizzell waived her sale claims where she had knowledge of how to enjoin the sale and failed to do so through her own actions. Frizzell could have paid the sum into the court to enjoin the sale, made a motion for reconsideration, or appealed the order, all of which she failed to do. This case is much closer to *Plein* than *Albice.*

Our conclusion that Frizzell waived her right to claims to invalidate the sale also furthers the goals of the deeds of trust act. In *Plein,* we identified three goals of the Washington deeds of trust act (ch. 61.24 RCW): "(1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles." 149 Wn.2d at 225 (citing *Cox v. Helenius,* 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Conditioning an injunction upon payment of appropriate sums promotes efficiency in the nonjudicial foreclosure process by making it clear to courts what a party must do to restrain a foreclosure sale.

8

This also further promotes the stability of land titles by clarifying when a nonjudicial foreclosure sale can be contested. We hold that Frizzell waived her right to contest the sale by failing to comply with the requirements of RCW 61.24.130.

2. Applicability of RCW 61.24.040(1)(f)(IX) and RCW 61.24.127

The Murrays contend that Frizzell's failure to obtain presale relief results in a waiver of all her claims. RCW 61.24.040(1)(f)(IX) states:

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

The language of the statute provides that failure to bring a lawsuit to restrain a sale may result in a waiver of grounds that may be raised for invalidating the sale, not for other distinct damages claims. As this court recently said, "'[W]aiver only applies to actions to vacate the sale and not to damages actions.'" *Schroeder*, 177 Wn.2d at 114 (quoting *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 796, 295 P.3d 1179 (2013)).

The Murrays contend, though, that RCW 61.24.040(1)(f)(IX) must be read together with RCW 61.24.127(1), which was enacted in 2009. That provision states that "[t]he failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter may not be deemed a waiver of a claim for damages asserting: (a) Common law fraud or misrepresentation" or "(b) A violation of Title 19 RCW." It "applies only to foreclosures of owner-occupied residential real property" and not to "the foreclosure of a deed of trust used to secure a commercial loan." RCW 61.24.127(3),

9

(4).[3] We have not yet had occasion to discuss the interplay of the waiver provision in RCW 61.24.040(1)(f)(IX) with RCW 61.24.127(1). In *Schroeder*, where we held that RCW 61.24.040(1)(f)(IX) did not foreclose damage actions, it was unnecessary to consider RCW 61.24.127(1) because we determined that if Schroeder's property was primarily agricultural, then the trustee lacked the statutory power to foreclose nonjudicially. *Schroeder*, 177 Wn.2d at 112. The statutory provisions for enjoining a nonjudicial foreclosure sale, including the waiver provision, were inapplicable thus

---

[3] "(1) The failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter may not be deemed a waiver of a claim for damages asserting:

   "(a) Common law fraud or misrepresentation;
   "(b) A violation of Title 19 RCW;
   "(c) Failure of the trustee to materially comply with the provisions of this chapter; or
   "(d) A violation of RCW 61.24.026.

"(2) The nonwaived claims listed under subsection (1) of this section are subject to the following limitations:

   "(a) The claim must be asserted or brought within two years from the date of the foreclosure sale or within the applicable statute of limitations for such claim, whichever expires earlier;
   "(b) The claim may not seek any remedy at law or in equity other than monetary damages;
   "(c) The claim may not affect in any way the validity or finality of the foreclosure sale or a subsequent transfer of the property;
   "(d) A borrower or grantor who files such a claim is prohibited from recording a lis pendens or any other document purporting to create a similar effect, related to the real property foreclosed upon;
   "(e) The claim may not operate in any way to encumber or cloud the title to the property that was subject to the foreclosure sale, except to the extent that a judgment on the claim in favor of the borrower or grantor may, consistent with RCW 4.56.190, become a judgment lien on real property then owned by the judgment debtor; and
   "(f) The relief that may be granted for judgment upon the claim is limited to actual damages. However, if the borrower or grantor brings in the same civil action a claim for violation of chapter 19.86 RCW, arising out of the same alleged facts, relief under chapter 19.86 RCW is limited to actual damages, treble damages as provided for in RCW 19.86.090, and the costs of suit, including a reasonable attorney's fee.

"(3) This section applies only to foreclosures of owner-occupied residential real property.

"(4) This section does not apply to the foreclosure of a deed of trust used to secure a commercial loan." RCW 61.24.127.

10

rendering RCW 61.24.127(1) inapplicable. Unlike in *Schroeder*, here the waiver provision does apply. Therefore, RCW 61.24.127 may also impact Frizzell's remaining claims, which mainly include her claim for fraud and claims for damages under the Mortgage Broker Practices Act (ch. 19.146 RCW), mortgage lending and home ownership laws (ch. 19.144 RCW), and the CPA (ch. 19.86 RCW).

The Murrays contend that RCW 61.24.127(4) precludes exemption of Frizzell's claims from the waiver provision because the deed of trust was used to secure a commercial loan. Frizzell disagrees, arguing the deed of trust was not used to secure a commercial loan and that the trial court did not rule on this question. The trial court denied Frizzell's claims because Frizzell failed to obtain presale injunctive relief. The trial court's order does not address RCW 61.24.127. Nor does the order state whether Frizzell occupied the real property under RCW 61.24.127(3), which would allow exemption from the waiver provision, or whether the deed of trust was used to secure a commercial loan under RCW 61.24.127(4), which might preclude exemption from the waiver provision. Furthermore, the trial court did not have the benefit of our guidance in *Schroeder* when it made its ruling, potentially leading it to erroneously conclude that the failure to obtain preinjunctive relief results in a waiver of all claims, notwithstanding RCW 61.24.127.

Accordingly, we remand for the trial court to determine the impact of RCW 61.24.127 on Frizzell's claims. Of course, in so far as any of her claims attempt to unsettle the deed of trust and invalidate the foreclosure sale, they are subject to the waiver

11

provision. *See In re Marriage of Kaseburg,* 126 Wn. App. 546, 558, 108 P.3d 1278 (2005) ("A person waives the right to contest the underlying obligations on the property in foreclosure proceedings when there is no attempt to employ the presale remedies."); *see also Plein,* 149 Wn.2d at 229 (stating that any objection to the trustee's sale is waived where presale remedies are not pursued, including defenses to the foreclosure sale, even when they otherwise could have been a valid defense); RCW 61.24.127(2)(c) ("The claim may not affect in any way the validity or finality of the foreclosure sale or a subsequent transfer of the property.").

## CONCLUSION

We reverse the Court of Appeals in part and hold that Frizzell waived her claims invalidating the sale. However, we remand Frizzell's remaining claims for damages to the trial court for consideration in light of RCW 61.24.127 and *Schroeder v. Excelsior Management Group, LLC.* The trial court must determine whether the loan to Frizzell was for owner-occupied residential real property.

Madsen, C.J.

WE CONCUR:

No. 87927-3

GONZÁLEZ, J. (concurring)—I agree with the majority that Tamara Frizzell has

not waived her monetary damages claims. But, then again, I find that Frizzell has not

waived any of her claims and has raised sufficient issues of material fact to warrant a

hearing on the merits. I write separately to rehabilitate the permissive language in

RCW 61.24.040(1)(f)(IX) as it applies to waiver and urge that waiver not be applied

when the validity of the underlying deed of trust is called into question. I also write

separately to provide guidance to the lower court that will consider the interplay

between RCW 61.24.127 and *Schroeder v. Excelsior Management Group*, 177 Wn.2d

94, 297 P.3d 677 (2013), on remand.

The majority has strayed from the plain language of RCW 61.24.040(1)(f)(IX)

and, in doing so, has undermined one of the principal goals of the deeds of trust act

(DTA), chapter 61.24 RCW—preventing wrongful foreclosure. The majority finds

that Frizzell's inability to obtain a preliminary injunction due to the bond requirement

necessarily waives Frizzell's legal challenge to the trustee's sale.[1] But this result rests on a flawed interpretation of the statute, case law, and factual record.

Frizzell alleges that she has been victimized by Barbara and Gregory Murray's predatory practices. Reading all inferences in her favor on summary judgment, as we must, it is clear that there are genuine issues of material fact that warrant trial.[2] Specifically, it is unclear whether the Murrays have the ability to foreclose on a deed of trust that was obtained under the facts of this case. However, the majority shuts the courthouse doors on Frizzell, even if what she has pleaded is true and the deed of trust is invalid. This is an inequitable, unprecedented application of waiver. By deciding

---

[1] The majority writes:

> We conclude, as in *Plein*, that Frizzell waived her right to contest the non-judicial foreclosure sale. First, she received notice of the right to enjoin the sale and she filed a motion to enjoin the sale. . . . In addition, she also had knowledge of a defense to the foreclosure prior to the sale, demonstrated by the claims made in her original complaint. Finally, Frizzell did not obtain an order restraining the sale, just as the plaintiff in *Plein* failed to do. . . . [C]onsciously choosing not to pursue all remedies is not an excuse, and posting security is a clear statutory requirement.

Majority at 5-6.

[2] The trial court did not make specific factual findings, but Frizzell has asserted that (1) she sought $20,000 initially but was talked into taking out a $100,000 loan, Clerk's Papers (CP) at 145, 185; (2) she has diminished capacity and is incapable of understanding legal and financial matters, CP at 190-91; (3) Greg Murray was the "mortgage broker" and Barbara Murray was the "lender" on the deal, CP at 146, 185-86; (4) the loan included $12,000 in fees that went right back into the pocket of the Murrays, CP at 90; (5) her income made the $1,000 monthly interest payment impossible and the lender was entirely unconcerned with Frizzell's ability to pay back the loan, CP at 190; (6) the loan was characterized as commercial, but never intended to be used for commercial purposes, CP at 193-94; (7) she defaulted immediately, CP at 132; (8) the home was paid in full and its value was close to $250,000, CP at 145; and (9) Barbara Murray purchased the home at the trustee's sale for $125,011, negligibly more than what was owed, CP at 133, 183.

to dispose of Frizzell's challenge at this stage, the majority risks sanctioning a grave miscarriage of justice.

### A. Neither the DTA nor Plein v. Lackey justifies the majority's application of waiver.

Nothing in the DTA requires a litigant to obtain a preliminary injunction to avoid waiving her challenges to a trustee's sale. Indeed, the relevant portion explicitly states that

> [a]nyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they *bring* a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit *may* result in a waiver of any proper grounds for invalidating the Trustee's sale.

RCW 61.24.040(1)(f)(IX) (emphasis added). The majority leans heavily on *Plein v. Lackey*, 149 Wn.2d 214, 67 P.3d 1061 (2003), to urge a strict application of waiver when the requirements of RCW 61.24.130 are not met. Not only is *Plein* distinguishable from the present case,[3] but also it does not demand the outcome reached by the majority here. Even in *Plein*, we explicitly acknowledged that "[t]he failure to take advantage of the presale remedies under the deed of trust act *may* result in waiver of the right to object to the sale." *Plein*, 149 Wn.2d at 227 (emphasis

---

[3] In *Plein*, the plaintiff-respondent sought to contest the default but not the validity of the underlying deed of trust. 149 Wn.2d at 220. Plein claimed that the obligation had been paid off so the foreclosure proceedings were void. *Id.* Given those facts, we held that "by failing to obtain a preliminary injunction or other restraining order restraining the trustee's sale, as contemplated by RCW 61.24.130, Plein waived any objections to the foreclosure proceedings." *Id.* at 229. Here, we confront a very different scenario. Unlike Plein, Frizzell does not dispute the amount due under the deed of trust but challenges whether the deed of trust is valid. These circumstances and claims fit much less neatly into the RCW 61.24.040(1)(f)(IX) and .130 framework than those of Plein.

3

added). That we found the permissive application of waiver appropriate in *Plein* does not necessitate its application here.

Last year, we reiterated that in RCW 61.24.040(1)(f)(IX) "[t]he word 'may' indicates the legislature neither requires nor intends for courts to strictly apply waiver" and correctly concluded that "[w]aiver . . . cannot apply to all circumstances or types of postsale challenges." *Albice v. Premier Mortg. Serv. of Wash., Inc.*, 174 Wn.2d 560, 570, 276 P.3d 1277 (2012). Applying this logic to the facts in *Albice*, we decided that equity demanded that waiver not apply to a challenge of a trustee's sale that was marred by procedural irregularities. *Id.* at 571. Distinguishing *Plein*, we found that the plaintiffs were not challenging the underlying debt but rather a trustee's failure to adhere to timing requirements established by the DTA. *Id.* at 571-72. Those circumstances did not warrant attaching waiver to the challenge of the sale when the litigants failed to exhaust presale remedies. The same can be said here. The amount owed on the loan is not being challenged by Frizzell, only the irregularities of the lending process and her capacity to contract in the first place.

Furthermore, the reasoning in *Albice* stands on sound precedential footing. Almost three decades ago, we decided that an executed trustee's sale was properly set aside as a result of the trustee's failure to follow statutorily prescribed procedure. *Cox v. Helenius*, 103 Wn.2d 383, 388, 693 P.2d 683 (1985). Significantly, we found that "[e]ven if the statutory requisites to foreclosure had been satisfied and the [homeowners] had failed to properly restrain the sale, this trustee's actions, along with

the grossly inadequate purchase price, would result in a void sale." *Id.* (citing *Lovejoy v. Americus*, 11 Wash. 571, 574, 191 P. 790 (1920); *Miebach v. Colasurdo*, 102 Wn.2d 170, 685 P.2d 1074 (1984)). Put another way, equity demanded that a lower court be able to entertain a postsale challenge even if the trustee had faithfully adhered to the DTA. By not considering the equity of the matter and the exceptional circumstances of the transaction between Frizzell and the Murrays (such as the inadequate purchase price), the majority has departed from well established norms.

*B. The three goals of the DTA weigh against finding that waiver applies.*

This court has repeatedly established that an interpretation of the DTA must consider the three goals of the act: (1) that the nonjudicial foreclosure process be efficient and inexpensive, (2) that parties have adequate opportunity to prevent wrongful foreclosure, and (3) that the stability of land titles be promoted. *Plein*, 149 Wn.2d at 225 (citing *Cox*, 103 Wn.2d at 387). The majority considers only expense and efficiency and stability of land titles in reaching its conclusion on the waiver issue. *See* majority at 8-9. Not only is that telling, but it is also entirely inconsistent with our guidance in *Albice*.

We established that "in determining whether waiver applies, the second goal—that the nonjudicial foreclosure process should result in . . . interested parties having an adequate opportunity to prevent wrongful foreclosure—becomes particularly important." *Albice*, 174 Wn.2d at 571. This is an understandable resolution. When a court considers whether to apply waiver under the DTA, it must balance the likelihood

5

of wrongful foreclosure against the need for efficiency and cost-effectiveness of the system and the need for stable land titles. By not considering whether Frizzell had an opportunity to prevent a wrongful foreclosure and by misunderstanding how the other two goals of the DTA are implicated by the factual record here, the majority errs.

First, the majority should have considered how RCW 61.24.040(1)(f)(IX) should be applied in the present case so as to give Frizzell adequate opportunity to prevent wrongful foreclosure. This factor leans heavily toward finding that Frizzell's challenge to the sale has not been waived. Frizzell claims that the Murrays took advantage of her incapacity, broke consumer protection laws, and extended a predatory loan that guaranteed her default and deprived her of the only asset she had to post the necessary bond. If this is true, the foreclosure is perhaps as wrongful as can be and requiring the payment of the deficiency of a predatory loan as bond only serves as an absolute bar to any challenge of the sale. Allowing this case to reach a fact-finder goes a long way to avoiding this potential injustice.

Next, the majority should have applied the facts of the case to see how the stability of land titles and the efficiency and expense of the foreclosure process are implicated. When we do more than simply recite these two goals, we find that both are best served by allowing Frizzell's claims to survive waiver. The nonjudicial foreclosure system depends on good faith and self-regulation by the parties because of the lack of judicial oversight. *See, e.g., Cox*, 103 Wn.2d at 388-89 ("Because the deed of trust foreclosure process is conducted without review or confirmation by a court,

the fiduciary duty imposed upon the trustee is exceedingly high."); *Albice*, 174 Wn.2d at 572 ("When trustees [are made to] strictly comply with their legal obligations under the act, interested parties will have no claim for postsale relief, thereby promoting stable land titles overall."); *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 790, 295 P.3d 1179 (2013) ("While the legislature has established a mechanism for nonjudicial sales, neither due process nor equity will countenance a system that permits the theft of a person's property by a lender or its beneficiary under the guise of a statutory nonjudicial foreclosure."). For this system to remain efficient and stable as a whole, courts must preserve the integrity of the DTA and step in when the act is being used to achieve unscrupulous ends. In rare cases, this requires entertaining a postsale challenge. Frizzell's is precisely such a case.

Assuming Frizzell's allegations are founded, the majority's stance on waiver deprives a victim of predatory practices of any way of keeping his or her home. The calculus is simple. A "lender" finds a vulnerable homeowner with substantial equity and extends a loan that is secured by a deed of trust. This obligation, however, is designed to be beyond the homeowner's means and to garner a near immediate default, setting the stage for nonjudicial foreclosure. As soon as the sale is scheduled, the victim has no recourse unless he or she can meet the bond requirement, which the victim cannot by design. I find such maneuvering objectionable and a much greater threat to the nonjudicial foreclosure system than a trial court's consideration of a post-sale challenge.

Though under the majority's interpretation of the DTA monetary damages claims are not necessarily waived postsale, these remedies may not adequately incentivize good faith dealing by trustees, grantees, and purchasers or address the extent of injuries suffered by grantor-homeowners. Furthermore, the section of the DTA that exempts monetary damages claims from waiver is also vulnerable to gamesmanship. This is precisely why I urge the court to provide greater guidance to the lower court on remand.

## C. For purposes of RCW 61.24.127, courts should look beyond an agreement's characterization to determine the nature of a loan.

The majority has correctly determined that waiver may not apply to Frizzell's monetary damages claims in light of RCW 61.24.127 and *Schroeder*. Though I do not think we need to reach this issue because I find that waiver should not apply to any of Frizzell's claims, it is significant that Frizzell still has some recourse. To ensure that her ability to bring suit is more than illusory, I find it necessary to expand on the majority's discussion of RCW 61.24.127 and *Schroeder*.

Under RCW 61.24.127, certain claims seeking monetary damages are exempt from the waiver provision so long as the underlying loan is noncommercial.[4] This of

---

[4] In its entirety, the section reads:

> (1) The failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter may not be deemed a waiver of a claim for damages asserting:
>
> (a) Common law fraud or misrepresentation;
>
> (b) A violation of Title 19 RCW;

course means that claims involving commercial loans are subject to the same waiver

analysis as challenges to the trustee's sale. RCW 61.24.127(4). Given this exception

---

(c) Failure of the trustee to materially comply with the provisions of this chapter; or

(d) A violation of RCW 61.24.026.

(2) The nonwaived claims listed under subsection (1) of this section are subject to the following limitations:

(a) The claim must be asserted or brought within two years from the date of the foreclosure sale or within the applicable statute of limitations for such claim, whichever expires earlier;

(b) The claim may not seek any remedy at law or in equity other than monetary damages;

(c) The claim may not affect in any way the validity or finality of the foreclosure sale or a subsequent transfer of the property;

(d) A borrower or grantor who files such a claim is prohibited from recording a lis pendens or any other document purporting to create a similar effect, related to the real property foreclosed upon;

(e) The claim may not operate in any way to encumber or cloud the title to the property that was subject to the foreclosure sale, except to the extent that a judgment on the claim in favor of the borrower or grantor may, consistent with RCW 4.56.190, become a judgment lien on real property then owned by the judgment debtor; and

(f) The relief that may be granted for judgment upon the claim is limited to actual damages. However, if the borrower or grantor brings in the same civil action a claim for violation of chapter 19.86 RCW, arising out of the same alleged facts, relief under chapter 19.86 RCW is limited to actual damages, treble damages as provided for in RCW 19.86.090, and the costs of suit, including a reasonable attorney's fee.

(3) This section applies only to foreclosures of owner-occupied residential real property.

(4) This section does not apply to the foreclosure of a deed of trust used to secure a commercial loan.

RCW 61.24.127.

to the exemption, it is important that lenders not be able to circumvent the additional protections contained in RCW 61.24.127(1)-(3) by merely characterizing a loan as commercial. To avoid such manipulations, courts should look deeper into the borrower's purpose in obtaining the loan when the record suggests a lender has merely labeled the loan as commercial so as to avoid consumer protections. *See, e.g.,* *Brown v. Giger*, 111 Wn.2d 76, 83, 757 P.2d 523 (1988) ("Thus, where it appears that the objective evidence of a loan's purpose has been 'rigged' by the lender, further scrutiny into the borrower's actual purpose in obtaining the funds may be necessary.").

In the context of nonjudicial foreclosures, *Schroeder* clearly supports this proposition. There, a lender stipulated that the property securing the debt was nonagricultural and that a nonjudicial foreclosure action was permissible in case of default. *Schroeder*, 177 Wn.2d at 106. We rejected this attempt to evade the statutory mandate that subjects agricultural properties exclusively to judicial foreclosure proceedings and remanded the case for factual findings regarding the primary use of the property. *Id.* at 115. Here, the lower court should do the same with regard to the characterization of the loan before determining whether RCW 61.24.127 applies. Keeping in mind that the commercial loan exception may be "rigged" by the lender, the court should make factual findings with regard to the nature of the loan in question.

With these observations, I respectfully concur in result.

González, J.

Gordon McCloud, J.

Fairhurst, J.