# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IOAN A. PAUNESCU and DANIELA PAUNESCU, | No. 47265-1-II |
| Appellants, | |
| v. | |
| GERHARD H. ECKERT and MARGARETHE ECKERT AS TRUSTEES OF THE ECKERT FAMILY TRUST, and SCOTT RUSSON and JANE DOE RUSSON, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Ioan and Daniela Paunescu[1] appeal the trial court's order granting summary judgment in a nonjudicial foreclosure action and awarding attorney fees and costs to Gerhard and Margarethe Eckert and Scott Russon and his wife. The Paunsecus argue that the nonjudicial foreclosure sale of their property was invalid and that other procedural irregularities occurred. They also appeal the trial court's orders on summary judgment. We hold that the deed of trust and promissory note were enforceable, the successor trustee was properly appointed, and the nonjudicial foreclosure sale was valid. Therefore, we affirm the trial court's order granting summary judgment and dismissing the Paunescus's claims against the Eckerts and the Russons, affirm the trial court's order denying partial summary judgment to the Paunescus, and affirm the trial court's order awarding the Eckerts and the Russons their reasonable attorney fees and costs.

---

[1] We refer to Ioan and Daniela Paunescu by their first names for clarity and intend no disrespect.

FACTS

In 2005, the Paunescus purchased property located in Vancouver. Ioan obtained loans from MIT lending and Bank of America to finance the purchase of the property, and secured the loans with two deeds of trust on the property. In 2007, Ioan sought to obtain another loan to refinance the Bank of America loan and to add a six-bedroom addition to the Paunescu residence to operate an adult family home business

A loan broker introduced Ioan to the Eckerts, who agreed to privately loan the Paunescus $290,000 to expand the property to accommodate an adult family home business. The Paunescus obtained a permit to add six bedrooms to their home for the specific purpose of running an adult family home, and the floor plan was approved by the county before the loan was completed. In February 2008, the State approved the Paunescus's license to operate an adult family home business using the six-bedroom addition to their residential home.

In May 2007, the Paunescus signed a promissory note to The Eckert Trust, as "Holder," for $290,000. Clerk's Papers (CP) at 202. The promissory note specified that Ioan would pay interest-only payments of $2,900 per month until May 2008, when the entire balance would be due in full. The promissory note also contained a commercial property clause that Daniela initialed on behalf of Ioan as his attorney, which stated that "the sums represented by this Note are being used for business, investment or commercial purposes, and not for personal, family or household purposes." CP at 203. Daniela stated in her deposition that she had an opportunity to read the commercial loan clause in the promissory note but "at that time, I did not read it." CP at 347, 487.

The promissory note was secured by a deed of trust on the Paunescus's property. Daniela granted the deed of trust to Fidelity National Title Insurance Company as Trustee and "The Eckert Trust" as beneficiary. CP at 190. The Eckerts stated that the Paunescus did not object to the form on any of the loan documents and that if they had objected, the loan would not have been approved at that point until the objections were resolved.

In September 2013, after the Paunescus stopped making payments and failed to pay the balance of the promissory note in full by the due date, the Eckerts sent a notice of default to the Paunescus. The Eckerts appointed Scott Russon as successor trustee and Russon began nonjudicial foreclosure proceedings under chapter 61.24 RCW. Russon mailed a notice of trustee's sale to MIT Lending, the Paunescus, and the Paunescus's attorney at the time. At the trustee's sale in February 2014, the Eckerts purchased the property and subsequently conveyed the property to the Eckert Family Trust.

Before the trustee's sale took place, the Paunescus did not object or take any action to restrain the sale. Russon began eviction proceedings on behalf of the Eckerts and notified the Paunescus that they had 60 days to vacate the property following the trustee's sale. In March 2014, the trial court granted the Eckerts a writ of restitution. The State revoked the Paunescus's business license due to their default on the Eckerts's loan.

No. 47265-1-II

In July 2014, the Paunescues sued the Eckerts and the Russons, alleging multiple causes of action[2] and seeking a declaratory judgment to invalidate both the deed of trust to The Eckert Trust and the trustee's sale of their residential property. The trial court granted summary judgment to the Eckerts and the Russons, denied partial summary judgment to the Paunescus, and awarded the Eckerts and the Russons their attorney fees and costs. The Paunescus appeal.

ANALYSIS

I. NOTICE OF APPEAL AND BRIEFING

While the Paunescus briefed the issue of summary judgment they failed to properly appeal the trial court's orders dated January 16, 2015 or January 30, 2015 as required under RAP 5.3(a).[3] While the Paunescus filed their notice of appeal on February 24, 2015, they attached only the trial court's January 30, 2015 order awarding attorney fees and costs to the Eckerts and the Russons. The Eckerts do not provide any briefing on the Paunescus's failure to properly appeal the trial court's summary judgment order or the denial of their partial motion for summary judgment.

A notice of appeal must be filed within 30 days after the entry of the decision of the trial court and must designate the decision or part of decision which the party wants reviewed. RAP 5.2(a); RAP 5.3(a). We hold pro se litigants to the same standard and same rules of procedure on appeal as attorneys. *West v. Wash. Ass'n of County Officials*, 162 Wn. App. 120, 137 n. 13,

---

[2] The Paunescues's amended complaint sought declaratory relief, quiet title, the establishment of a homestead exception and alleges breach of fiduciary duty, and alleged violations of the Unfair Business Practices Act (RCW 19.86), the Consumer Loan Act (RCW 31.04), and the usury statute (RCW 19.52.020).

[3] The party filing the notice of appeal should attach to the notice of appeal a copy of the signed order or judgment from which the appeal is made. RAP 5.3(a).

4

252 P.3d 406 (2011). Appellants are required to provide argument in support of the issues presented for review. RAP 10.3(a)(6),(g).[4]

Because the Paunescucs briefed the issue related to the validity of the nonjudicial foreclosure order, which was the subject of the trial court's summary judgment orders, we exercise our discretion under RAP 18.14[5] to reach the merits of this issue.[6]

## II. SUMMARY JUDGMENT

We review a trial court's grant of summary judgment de novo and engage in the same inquiry as the trial court. *Wash. Fed. v. Harvey*, 182 Wn.2d 335, 339, 340 P.3d 846 (2015). Summary judgment is proper where, viewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[4] RAP 10.3(a)(6) and (g) state that the brief of the appellant should contain under appropriate headings the argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record, and the appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

[5] An appellate court may, on its own motion, affirm or reverse a decision or any part thereof on the merits. RAP 18.14(a).

[6] To the extent that the Paunescus argue alleged misconduct by the trial attorneys to support their argument that the trial court erred in its award of attorney fees, that issue is not before us because they have not provided argument to support the claim of error as required under RAP 10.3(a)(6), (g).

The Paunescus also argue that the Eckerts and the Russons violated CR 30(b)(2) by deposing Daniela soon after the Paunescus's attorney withdrew and before they had an opportunity to find new counsel. The Paunescus raise this argument for the first time in their reply brief, thus, we do not consider it under RAP 10.3(c) (reply brief is limited to a response to the issues to which the reply brief is directed).

party is entitled to a judgment as a matter of law." CR 56(c). We consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014).

A court may order a continuance of a summary judgment motion if the party opposing the motion can show that he is unable to present facts essential to justify his opposition. CR 56(f). The fact that all discovery has not been completed is not a basis to continue a summary judgment motion. *See Manteufel v. Safeco Ins. Co. of Am.*, 117 Wn. App. 168, 175, 68 P.3d 1093 (2003).

A. SUMMARY JUDGMENT PROCEDURE

The Paunescus argue that the timing of the summary judgment hearing was improper because after the Eckerts and the Russons had deposed Daniela, defendants' counsel asserted that they would like to depose Ioan as well, but did not do so.

CR 56(f) allows a party to move to continue a summary judgment hearing if the party opposing the motion cannot present facts essential to justify the party's opposition to the motion and provides that the court may order a continuance to permit affidavits to be obtained, depositions to be taken, or discovery to be conducted.

The Paunescus did not file a motion to continue the summary judgment motion under CR 56(f). Instead, Daniela told the trial court on December 12, 2014 that she did not have any objection to proceeding with the summary judgment hearing on January 16, 2015 and first raised her objection to the summary judgment proceeding at the January 30 hearing on the attorney fees award, after the trial court heard and granted summary judgment. The Eckerts and the Russons chose not to depose Ioan and the Paunescus chose not to ask for or file a motion to continue the

summary judgment motion prior to the motion being heard on December 12, 2014. The Paunescus

do not present any basis to set aside or reverse the trial court's summary judgment orders.

B. THE NONJUDICIAL FORECLOSURE

The Paunescues argue that (1) the nonjudicial foreclosure sale was invalid because The

Eckert Trust, named as beneficiary on the deed of trust,[7] is not the correct legal entity and cannot

be a legal beneficiary of a deed of trust,[8] (2) the loan was a loan for residential property, not a

commercial loan, (3) Russon was not properly appointed as a successor trustee, (4) Russon failed

to follow proper nonjudicial foreclosure procedure under RCW 61.24.030, and (5) the homestead

exemption applies.[9]  We disagree.

---

[7] The Paunescus also argue that their first deed of trust on the property, to which the Eckerts's loan was junior, is invalid because it lists "Mortgage Electronic Registration Systems, Inc. (MERS)" as beneficiary of the deed of trust. Br. of Appellant at 10; CP at 296. That deed is irrelevant to this case and MERS is not involved with the transaction between the Paunescus and the Eckerts. Thus, we do not further address this argument.

[8] The Paunescus also argue that they are entitled to relief from the trial court's summary judgment order under CR 60. We do not address this argument because the Paunescus did not raise it below or in their opening appellate brief. RAP 2.5(a), 10.3(c).

[9] They also raise several other issues that were not fully briefed or were not preserved. In their amended complaint, the Paunescus also alleged a breach of fiduciary duty by Russon and violations of the Unfair Business Practice Act (RCW 19.86), Consumer Loan Act (RCW 31.04), and usury statute (RCW 19.52). CP 26–28. We do not address these issues because these issues were not addressed in either the Paunescus's motion for partial summary judgment or the orders on summary judgment, thus these issues are waived on appeal. RAP 2.5(a).

Additionally, the Paunescus argue that the trustee reported false information to the Department of Social and Health Services. We do not address this issue because the Paunescus did not provide argument in their brief and we hold the Paunsecus to the same standard and same rules of procedure on appeal as attorneys. *West,* 162 Wn. App. at 137 n. 13. Appellants are required to provide argument in support of the issues presented for review. RAP 10.3 (a)(6), (g). Assignments of error not argued in brief are waived. *Sullins v. Sullins*, 65 Wn.2d 283, 285, 396 P.2d 886 (1964).

1. Deed of Trust & Promissory Note

A beneficiary is the "holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). The term "holder" refers to the person or entity that is in actual possession of the promissory note secured by the deed of trust. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 101, 285 P.3d 34 (2012). Here, The Eckert Trust is named as the holder of the promissory note secured by the deed of trust and the promissory note identifies The Eckert Trust as the beneficiary of the deed of trust.

A trust as an entity is separate from the trustor, the trustee, and the beneficiary of the trust. *See e.g.* RCW 11.96A.030(6) (defining the persons interested in a trust, including the "persons holding powers over the trust . . . assets"). Assets of a trust belong to the trust, not to the trustee. *See* RCW 11.96A.050(1)(b) (venue is proper in any county "where any real property that is an asset of the trust is located"). The trustee and trust are distinct because the trustee has "discretionary power to acquire . . . *the trust property*" according to law. RCW 11.98.070 (emphasis added). The trustee holds business assets for the trust, uses the trust's general assets for the purpose of the trust, and can guarantee "on behalf of the trust" any loan to the business or secure a loan with "any other property *of the trust*." RCW 11.98.070(21)(e). Thus, a trust can be a legal beneficiary of a deed of trust when it holds the promissory note secured by the deed of trust.

The Paunsecus point to inconsistencies in how the trust name is described, arguing that the deed of trust is invalid because the loan proceeds came from "the Eckert Family Trust" but the quit claim deed granted the property from "The Eckert Trust" to the Eckerts individually, as trustees of "the Eckert Family Trust." CP at 335. This difference in the names used to describe the trust is a scrivener's error, but the error does not invalidate the deed of trust at issue. Furthermore, the

record does not demonstrate that the Paunescus objected at the time to obtaining the loan proceeds from "The Eckert Trust." The Paunescus do not cite any persuasive authority[10] to support their argument. Therefore, there is no genuine issue of material fact on whether the deed of trust and promissory note are valid and enforceable.

2. Character of the Loan

The Paunescus argue that the loan was a residential loan, not a commercial loan. Again, we disagree.

A commercial loan is "a loan that is not made primarily for personal, family, or household purposes." RCW 61.24.005(4). We determine the purpose of a loan according to the borrower's manifestations of intent for use of the loan proceeds. *Brown v. Giger*, 111 Wn.2d 76, 82, 757 P.2d 523 (1988).

Before the Paunescus received the loan proceeds, they decided to use the money to construct an addition to their home for the purpose of conducting an adult family home business, but they had also considered using the addition as a duplex to supplement their income. They had obtained a permit from the county in which the property exists and secured a floor plan with approval by the county. The Eckerts understood that the Paunescus would use the loan proceeds for the adult family home business as well. The promissory note included a provision stating that the "sums represented by this Note are being used for business, investment or commercial

---

[10] The Paunescues cite *Lowman v. Guie*, 130 Wash. 606, 607, 228 P. 845 (1924) (holding that under Washington incorporation statutes, a "common-law trust" is not a corporate entity), and *Portico Mgmt. Grp., LLC v. Harrison*, 202 Cal. App. 4th 464, 474, 136 Cal. Rptr. 3d 151 (2011) ("a trust is not an entity distinct from its trustees and capable of legal action on its own behalf"). But neither of these cases apply here.

purposes, and not for personal, family or household purpose," and the Paunescus initialed that provision. CP at 203. The objective evidence demonstrates that the Paunescus's loan was a commercial loan. The Paunescus fail to raise any genuine issue of material fact as to the character of this loan.

3. Appointment of Successor Trustee

The Paunescus argue that because the deed of trust listed an invalid beneficiary, the appointment of Russon as the successor trustee was also invalid. We disagree.

The actual holder of the promissory note or other instrument evidencing the obligation may be the beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property. *Bain*, 175 Wn.2d at 89. Because The Eckert Trust is listed as the holder on the promissory note and as beneficiary of the deed of trust, the Eckerts, as trustees, had the power to appoint Russon as a successor trustee under RCW 61.24.010. Russon's appointment was valid and once the Paunescus defaulted on their loan, he had the right to proceed with the nonjudicial foreclosure process under RCW 61.24.030.

4. Trustee's Sale Process

The Paunescus argue that Russon failed to follow the statutory process to foreclose on a promissory note secured by their residential property. We disagree because the Paunescus did not challenge the nonjudicial foreclosure sale as they could have done under RCW 61.24 and the

objective evidence demonstrates that the Eckerts were loaning the money for commercial purposes.[11]

The nonjudicial foreclosure process must follow the requirements of chapter 61.24 RCW. *Bain*, 175 Wn.2d at 108. RCW 61.24.030 controls these procedures for commercial loans. *Compare* RCW 61.24.030, *with* RCW 61.24.031(7)(a) (requires the trustee to take certain due-diligence steps to contact the borrower before a nonjudicial foreclosure does not apply to a deed of trust "[s]ecuring a commercial loan").

Because the Paunescus received notice of the right to enjoin the sale, had knowledge of a defense to a nonjudicial foreclosure prior to the sale, and failed to bring an action to enjoin the sale, they waived the right to contest the nonjudicial foreclosure. *Frizzell v. Murray*, 179 Wn.2d 301, 306-07, 313 P.3d 1171 (2013) (holding that the mortgagor waives the right to contest the nonjudicial foreclosure when they receive notice of the right to enjoin sale, had knowledge of nonjudicial foreclosure prior to the sale, and failed to enjoin the sale). Although the Paunescus may not have read or understood the loan paperwork, Daniela acknowledged at her deposition that

_____

[11] From their argument that the nonjudicial foreclosure sale was invalid, the Paunescus also challenge the unlawful detainer action that Russon brought following the trustee's sale and the garnishment proceedings Russon instituted to collect the Eckert's judgment against the Paunescus. Russon's unlawful detainer action proceeded under a different cause number than this case. The Paunescus did not designate the orders from the unlawful proceeding action in their notice of appeal in this case. We will review orders not designated in the notice of appeal only if the order prejudicially affects the decision designated in the notice of appeal and the trial court entered the order before we accepted review. RAP 2.4(b). We will review a final judgment that is not designated in the appellant's notice of appeal "only if the notice designates an order deciding a timely posttrial motion." RAP 2.4(c). The final order in the unlawful detainer action and the garnishment proceedings do not affect the orders designated in the Paunescus's current notice of appeal. Thus, we do not review the propriety of these orders.

she had time to read the documents and to ask questions if she had wanted to do so. Thus, the Paunescus waived their challenges to the nonjudicial foreclosure.

5. The Homestead Exemption

The Paunescus argue that the nonjudicial foreclosure sale did not extinguish their homestead rights. The homestead exemption is not applicable here.

The homestead exemption protects from "execution or forced sale" a person's homestead subject to certain exceptions. RCW 6.13.070-080. A nonjudicial foreclosure, the process that occurred here, conducted by a trustee under a deed of trust that empowers the trustee to sell the property, is not a forced sale. *Felton v. Citizens Fed. Sav. & Loan Ass'n of Seattle*, 101 Wn.2d 416, 423, 679 P.2d 928 (1984); *see also* RCW 6.13.080(2)(a) (The homestead exemption is not available against an execution or forced sale in satisfaction of judgments obtained on debts secured by security agreements describing as collateral the property that is claimed as a homestead.). A trustee sale is conducted pursuant to a power of sale granted to the trustee, thus the grantor has consented to a lawful trustee sale. *Felton*, 101 Wn.2d at 423. Therefore, the nonjudicial foreclosure sale here is not subject to the Paunescus's homestead rights.

III. ATTORNEY FEES AND COSTS

The Eckerts and the Russons request reasonable attorney fees and costs on appeal. We grant their requests.

RAP 18.1(a) provides that we may award a party reasonable attorney fees and costs on appeal when an applicable law grants the party the right to recover them. We may award attorney fees and costs when a contractual provision authorizes the award. *Durland v. San Juan County*, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). *See also* RCW 4.84.330 (authorizing an award for attorney fees and costs to the prevailing party in an action to enforce a contractual provision entered into after September 21, 1977).

The deed of trust between Ioan and The Eckert Trust included a clause for attorney fees and costs with the following language to "protect the security interest" of the deed of trust by Ioan's covenant and agreement: "To pay all costs, fees[,] and expenses in connection with this Deed of Trust, including the expenses of the Trustee incurred in enforcing the obligation secured hereby and Trustee's and attorney's fees actually incurred, as provided by statute." CP at 190-91. Because the Eckerts and the Russons are the prevailing parties on appeal, we grant them their reasonable attorney fees and costs on appeal.

## CONCLUSION

We hold that the deed of trust and promissory note were enforceable, the successor trustee was properly appointed, and that the nonjudicial foreclosure sale was valid. Therefore, we affirm the trial court's summary judgment order dismissing the Paunescus's claims against the Eckerts

and the Russons, affirm the trial court's order awarding the Eckerts and the Russons their reasonable attorney fees and costs, and affirm the trial court's order denying partial summary judgment to the Paunescus.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.