IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THOMAS F. MERRY, | ) | |
| | ) | No. 32474-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWEST TRUSTEE SERVICES, | ) | PUBLISHED OPINION |
| INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, C.J. — Thomas Merry appeals the dismissal of a declaratory judgment action in which he sought to establish the priority of his deed of trust on a residential property after a trustee, claiming to act on behalf of Nationstar Mortgage, LLC, commenced nonjudicial foreclosure. Relying on *Bain v. Metropolitan Mortgage Group*, 175 Wn.2d 83, 93, 285 P.3d 34 (2012), Mr. Merry contends that Nationstar had no enforceable deed of trust and that the promissory note it held had been rendered void. But Mr. Merry took no action to restrain the trustee's sale. After the sale was completed, Nationstar and the trustee successfully argued that Mr. Merry's interest was eliminated by the sale and he had waived any right to set it aside.

Mr. Merry argues that recent decisions of the Washington Supreme Court and this court hold that waiver will not be applied to prevent a plaintiff from seeking to set aside a completed trustee's sale where the plaintiff demonstrates a failure to strictly comply with the requirements of Washington's deeds of trust act (DTA), chapter 61.24 RCW. We agree that *Albice v. Premier Mortgage Services of Washington, Inc.*, 174 Wn.2d 560, 568, 276 P.3d 1277 (2012) and *Schroeder v. Excelsior Management Group, LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013) are controlling authority that if the conduct of a foreclosure sale does not strictly comply with the DTA, a court can set aside a sale if it would be inequitable under the circumstances and inconsistent with the goals of the DTA to apply the defense of waiver.

But Mr. Merry relies on technical, formal, likely correctable and non-prejudicial violations of the DTA arising because Nationstar, and its predecessors in interest, were members of Mortgage Electronic Registration Systems, Inc. (MERS), a privately-operated mortgage registry whose practices in creating and transferring beneficial interests conflicted with requirements of the DTA. While *Bain* recognized that those practices had the potential to prejudice Washington borrowers—particularly those needing to identify their lender to explore modification of their loans—Mr. Merry's claim is not that MERS's practices harmed him. It is instead that MERS's practices have somehow rendered void a bona fide, senior $235,000-plus obligation secured by the subject property.

2

The longstanding elements of the doctrine of waiver are present: Mr. Merry received notice of his right to enjoin the trustee's sale, had actual knowledge that MERS had acted as an unlawful beneficiary under the deed of trust interest asserted by Nationstar, and failed to bring action to enjoin the sale. For that reason, and because it is not inequitable nor is it inconsistent with the goals of the DTA to apply waiver, we hold that the trial court properly applied waiver and dismissed Mr. Merry's complaint. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2007, Sharon Weirich borrowed $205,440 from Countrywide Home Loans, Inc. and executed a deed of trust on her real property located in Dryden, Washington, as security. The deed of trust identified Countrywide as the lender, Landsafe Title of Washington as the trustee, and MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." Clerk's Papers (CP) at 41. It stated, "MERS is the beneficiary under this Security Instrument." *Id.*

In December 2011, MERS executed an assignment of deed of trust as "holder," transferring "all beneficial interest" under the 2007 Weirich-to-Countrywide deed of trust to Bank of America, N.A. CP at 61. The assignment was recorded in Chelan County on December 8, 2011.

According to a notice of trustee's sale later filed in Chelan County, Northwest Trustee Services, Inc. (Northwest Trustee), acting on behalf of Bank of America, mailed

3

and personally served Ms. Weirich with a notice of default on October 31, 2012. The notice of default identified the owner of the note as the Federal National Mortgage Association (Fannie Mae) and identified Bank of America as the loan servicer.

In November 2012, Bank of America, as "present beneficiary under [the Weirich-to-Countrywide] deed of trust" appointed Northwest Trustee as successor trustee under the deed of trust. CP at 66.

Meanwhile, on the borrower's side of the transaction, and also in November 2012, Ms. Weirich executed a deed of trust to the appellant, Thomas Merry. According to its terms, it secured payment of a $68,000 promissory note. Ms. Weirich executed a power of attorney and assignment of legal claims to Mr. Merry in the same timeframe.

Shortly after these November dealings, Ms. Weirich received a notice of trustee's sale dated December 12, 2012, informing her that her property would be sold to satisfy her promissory note obligation to MERS, as nominee for Countrywide, which had been assigned to Bank of America. The notice identified the date of the trustee's sale as April 19, 2013. The sale did not occur on that date, however, and the 120-day statutory timeline for conducting a sale following service of notice passed without any rescheduled sale. Ms. Weirich's arrears on her promissory note continued to grow.

In May 2013, Bank of America executed an assignment, transferring its beneficial interest under the deed of trust together with the note to Nationstar. The assignment was recorded in Chelan County on June 6, 2013.

4

On October 8, 2013, Northwest Trustee recorded an amended notice of trustee's sale in Chelan County, identifying the date of the trustee's sale as November 15, 2013. The notice indicated that over $235,000 was then owed on the note Ms. Weirich had given Countrywide in 2007.[1] Although no evidence of service of the notice of trustee's sale is included in the record on appeal, the notice was required by the DTA to be served on Ms. Weirich, as grantor, and Mr. Merry, as holder of a junior deed of trust, at or about the same time. RCW 61.24.040(1)(b). Consistent with RCW 61.24.040(1)(f), which prescribes the form of notice, the notice of trustee's sale stated:

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

CP at 81.

Before the scheduled sale date, Mr. Merry commenced legal action against Northwest Trustee and Nationstar in Chelan County by serving both with a "Complaint to Declare Lien Priority, and to Declare Deed of Trust Void and Promissory Note Unenforceable." CP at 3. Among matters alleged by Mr. Merry's complaint were a

---

[1] According to the notice, the amount owed to reinstate the obligation as of October 1, 2013, was $43,291.67 and the principal balance owing was $193,592.47. CP at 80.

number of technical violations of the DTA in the form of actions by entities who had been improperly designated or appointed or otherwise lacked authority.

It is clear from Mr. Merry's pro se complaint that he was aware of the trustee's sale scheduled for November 15.[2] His complaint stated that in response to a request for a true copy of the promissory note signed by Ms. Weirich, Northwest Trustee had provided her with a photocopy that appeared to bear Countrywide's endorsement in blank.

The complaint sought the court's declaration that Northwest Trustee was not trustee at the time it issued the notice of default; that Nationstar lacked standing to enforce the note, initiate nonjudicial foreclosure, or appoint a substitute trustee; that Ms. Weirich's promissory note and deed of trust to Countrywide were unenforceable and void; that the note was a lost or stolen instrument; and that Mr. Merry's deed of trust was in first position on the property.

Mr. Merry did not attempt to enjoin the trustee's sale of the property. After one brief postponement, Northwest Trustee proceeded with the sale on January 3, 2014, selling the property to Nationstar, which immediately conveyed its interest to Fannie Mae.

---

[2] Given Mr. Merry's clear awareness of the trustee's sale reflected in the complaint, his candid confirmation at oral argument in this court that he received notice of the sale, and the absence of any argument from him at any time that notice of the trustee's sale was deficient, we deny the respondents' joint motion asking us to take judicial notice of documents outside the record that would demonstrate that he was served with notice. The evidence has proved unnecessary.

Nationstar and Northwest Trustee then answered Mr. Merry's complaint and in February Northwest Trustee moved for judgment on the pleadings under CR 12(c), arguing that Mr. Merry waived his right to challenge the completed sale by failing to seek an order restraining it.

In March 2014, having reviewed the parties' briefing, documents referenced by Mr. Merry's complaint and that Northwest Trustee attached to its motion, and having heard argument from the parties, the court granted the motion and dismissed the complaint with prejudice. Mr. Merry's motion for reconsideration was denied.

## ANALYSIS

Mr. Merry argues that the trial court erred in granting the motion to dismiss his complaint because he presented "issues of material fact" as to the invalidity of the interests in the Weirich property asserted by MERS, Bank of America, Northwest Trustee, and Nationstar, possibly leaving his deed of trust as the only valid encumbrance against the property. Br. of Appellant at 14. While Northwest Trustee framed its motion as a motion for judgment on the pleadings under CR 12(c),[3] one document submitted with its motion and critical to the dismissal relief was the trustee's deed, establishing that

---

[3] Documents whose contents are alleged in a complaint and whose authenticity no party questions but that are not physically attached to the complaint may be considered in ruling on a motion to dismiss. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726 n.45, 189 P.3d 168 (2008); *Trujillo v. Northwest Trustee Services, Inc.*, 181 Wn. App. 484, 491, 326 P.3d 768 (2014), *review granted* 182 Wn.2d 1020, 345 P.3d. 784, (2015).

the trustee's sale had taken place. Because that document was not mentioned in Mr.

Merry's complaint (it postdated his complaint), the fact that it was presented and was not

excluded by the court converted the defendants' CR 12(c) motion into one for summary

judgment. *City of Moses Lake v. Grant County*, 39 Wn. App. 256, 258, 693 P.2d 140

(1984).

The fact that the foreclosure sale had taken place was not disputed by Mr. Merry

and the motion presented a pure legal issue: whether, even if Mr. Merry is right about

ineffective assignments and appointments, the trial court properly applied waiver because

he failed to pursue a presale injunction authorized by RCW 61.24.130 and failed to allege

any basis on which waiver would not apply. We review questions of law and summary

judgment rulings de novo. *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 775, 783, 336 P.3d

1142 (2014).

*Failure to seek the presale injunction authorized by RCW*
*61.24.130 can operate as a waiver*

In obtaining a loan, a borrower, as "grantor," may execute a deed of trust to

encumber his or her interest in real property as security for the performance of its

obligation. RCW 61.24.005(7) (defining "grantor"). When the deed of trust grants the

trustee the power of sale if the borrower defaults on repaying the underlying obligation,

the trustee may usually foreclose the deed of trust and sell the property without judicial

supervision—a "significant power." *Bain*, 175 Wn.2d at 93.

8

To protect interested parties against an improper exercise of this significant power, the DTA provides affected parties with a broad opportunity to challenge the sale before it occurs. RCW 61.24.130(1) states that nothing contained in the DTA shall prejudice "the right of the borrower, grantor . . . or any person who has an interest in, lien, or claim of lien against the property . . . to restrain, on any proper legal or equitable ground, a trustee's sale." Before conducting a nonjudicial foreclosure, the trustee is required to draw the attention of affected parties to their right to restrain the sale and the possible consequence of waiver should they fail to do so with the form of notice provided by Northwest Trustee, described above.

It has long been held that "RCW 61.24.130 sets forth the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure." *Cox v. Helenius*, 103 Wn.2d 383, 388, 693 P.2d 683 (1985). A party will be deemed to have waived his or her right to challenge a trustee's sale when the party "(1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." *Plein v. Lackey*, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003) *see also Frizzel v. Murray*, 179 Wn.2d 301, 306-07, 313 P.3d 1171 (2013). In *CHD, Inc. v. Boyles*, 138 Wn. App. 131, 157 P.3d 415 (2007), we held that a plaintiff waives the right to seek a declaratory judgment establishing his entitlement to a portion of the proceeds of the trustee's sale if he or she fails to restrain the sale.

9

Because all of the elements of waiver were present here, the superior court properly dismissed Mr. Merry's complaint.

*In some situations, courts have not applied waiver to deny an interested party's effort to set aside the trustee's sale.*

Mr. Merry nonetheless relies on recent case law holding that a trustee's noncompliance with the DTA is a sufficient basis for allowing a challenge to a completed trustee's sale. And during the same timeframe, our Supreme Court decided in *Bain* that common mortgage banking practices following the creation of MERS fail to comply with the DTA, with the result that many completed trustee sales are potentially subject to invalidation. It is the noncompliant mortgage banking practices traceable to designating MERS as beneficiary on which Mr. Merry relies in contending that his was the only valid encumbrance on Ms. Weirich's Dryden property. He claims that two decisions by the Court of Appeals—*Rucker v. NovaStar Mortgage, Inc.*, 177 Wn. App. 1, 311 P.3d 31 (2013) and *Bavand v. OneWest Bank, F.S.B.*, 176 Wn. App. 475, 309 P.3d 636 (2013), *abrogated in part on other grounds by Frias v. Asset Foreclosure Services, Inc.*, 181 Wn.2d 412, 334 P.3d 529 (2014)[4]—support his challenge to the dismissal of his claims.

---

[4] *Frias* holds, contrary to one of the holdings of *Bavand*, that the DTA does not give rise to an implied cause of action for *monetary damages* premised on DTA violations absent a completed foreclosure sale. Compare *Frias*, 181 Wn.2d at 422-23 with *Bavand*, 176 Wn. App. at 496 (restating its holding in *Walker v. Quality Loan Service Corporation of Washington*, 176 Wn. App. 294, 308 P.3d 716 (2013) that a cause of action for wrongful institution of foreclosure proceedings exists beyond that provided by RCW 61.24.127).

We begin with our Supreme Court's decisions in *Albice* and *Schroeder*. In *Albice*, homeowners who had fallen behind in payments on a loan and received a notice of trustee's sale negotiated a forbearance agreement under which they would pay seven agreed monthly payments. *Albice*, 174 Wn.2d at 564. The trustee named by their deed of trust continued the date of the foreclosure sale each time the first six monthly payments required by the forbearance agreement were made, even though each of the six payments was made late. When the seventh and last forbearance agreement payment was made, however (and was also made late), the trustee rejected it and proceeded with the sale. The price at which the property was sold was a small fraction of the homeowners' equity.

The first issue accepted by the Supreme Court for review in *Albice* was whether a trustee's sale taking place beyond the 120 days for a sale permitted by RCW 61.24.040(6) warranted invalidating the sale.[5] *Id.* at 566. A primary consideration for the court, as in all cases construing the DTA, were the three basic objectives the act is deemed to further: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of land titles." *Id.* at 567 (citing *Cox*, 103 Wn.2d at 387).

---

[5] RCW 61.24.040(6) provides in relevant part that the trustee "may, for any cause the trustee deems advantageous, continue the sale for a period or periods *not exceeding a total of one hundred twenty days*" by giving the statutorily required notice. (Emphasis added.)

11

The *Albice* court observed that "[b]ecause the act dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes" and that "[p]rocedural irregularities, such as those divesting a trustee of its statutory authority to sell the property, can invalidate the sale," placing principal reliance on *Udall v. T.D. Escrow Services, Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007). *Albice*, 174 Wn.2d at 567. It concluded:

> When a party's authority to act is prescribed by a statute and the statute includes time limits . . . failure to act within that time violates the statute and divests the party of statutory authority. Without statutory authority, any action taken is invalid. As we have already mentioned and held, under this statute, strict compliance is required.

*Id.* at 568.

The successful bidder at the trustee's sale argued that even if the DTA had been violated, the homeowners waived their right to bring a postsale challenge because they could have, but did not, seek to restrain the sale under RCW 61.24.130. The *Albice* court observed, however, that the statute says "'[f]ailure to bring . . . a lawsuit *may* result in waiver of any proper grounds for invalidating the Trustee's sale,'" and thereby "neither requires nor intends for courts to strictly apply waiver. Under the statute, we apply waiver only where it is equitable under the circumstances and where it serves the goals of the act." *Id.* at 570 (quoting RCW 61.24.040(1)(f)(IX) (alteration in original).[6]

---

[6] A concurring opinion in *Albice* expressed concern that because the DTA's procedural requirements are "extensive," and because "it is hard to imagine a claim for

In *Schroeder,* decided one year after *Albice*, the owner of allegedly agricultural land located in Stevens County challenged the nonjudicial foreclosure of a deed of trust and sale of his property. The DTA does not permit the nonjudicial foreclosure of land principally used for agricultural purposes; where agricultural ground is pledged as security, the deed of trust must be foreclosed judicially. 177 Wn.2d at 105. Mr. Schroeder initially obtained a temporary order restraining sale of his property based on its asserted agricultural character but the order was later dissolved because Mr. Schroeder had "knowingly" agreed with his lender, in resolving a prior attempted foreclosure, to "waive[] any and all right he may have to judicial foreclosure of the subject property on the grounds it is used for agricultural purposes." *Id.* at 100.

The Supreme Court held that Mr. Schroeder could not *contractually* waive compliance with the DTA, explaining that it "is not a rights-or-privileges-creating statute. Instead, it sets up a list of 'requisite[s] to a trustee's sale.'" *Id.* at 106 (quoting RCW 61.24.030). "These . . . are limits on the trustee's power to foreclose without judicial supervision." *Id.* at 107

In later addressing the trustee's argument that Mr. Schroeder had waived his challenge by failing to exercise his right to seek to restrain the sale, the court did not

---

relief *not* based on a violation of some legal obligation . . . the majority's approach would actually permit postsale challenges to foreclosure sales as a general rule, at least where 'the claims are promptly asserted.'" *Albice v. Premiere Mort. Servs. of Wash., Inc.,* 174 Wn.2d 560, 581 & n.13, 276 P.3d 1277 (2012) (Stephens, J., concurring).

13

explicitly discuss why it would be inequitable under the circumstances or contravene goals of the DTA to apply the doctrine of waiver. The court did state that if the land was agricultural, then the statute did not apply. *Id.* at 111. The Supreme Court vacated the order dissolving the temporary injunction and held that "the trial court must hold a hearing to determine whether the property was primarily agricultural at relevant times." *Id.* at 115. "[I]f it was," the court held, "the nonjudicial foreclosure sale shall be vacated." *Id.*

### *The implications of Bain for vacating foreclosure sales*

Within a couple of months after deciding *Albice* and six months before deciding *Schroeder,* our Supreme Court was called upon to decide whether business practices of members of MERS in transferring beneficial interests in borrowers' notes and deeds of trust through the MERS registry, without any public recording, might themselves violate the DTA. MERS was established in the 1990s by entities in the mortgage banking industry to create a central registry that would facilitate the tracking and transfer of mortgage rights and interests. *See Bain,* 175 Wn.2d 94-98. To that end, members of MERS included it as an additional party to a traditional deed of trust transaction so that MERS could later effect transfers within its registry on its members' behalf. The MERS system "changes 'a traditional three party deed of trust [grantor, trustee, and lender/beneficiary] [into] a four party deed of trust, wherein MERS would act as the contractually agreed upon beneficiary for the lender and its successors and assigns.'"

14

*Bain*, 175 Wn.2d at 96. *Bain* cited the observation of a New York bankruptcy court that while MERS was created to alleviate perceived problems of delay created by state and local recording processes, "'in effect the MERS systems was designed to *circumvent* these procedures. MERS, as envisioned by its originators, operates as a *replacement* for our traditional system of public recordation of mortgages.'" *Id.* at 97 (emphasis added) (quoting *In re Agard*, 444 B.R. 231, 247 (Bankr. E.D.N.Y. 2011), *vacated in part on other grounds sub nom. by In re Agard v. Select Portfolio Servicing, Inc.*, 2012 WL 1043690 (Mar. 28, 2012) (court order)).

The Supreme Court was presented in *Bain* with three questions certified by the federal district court for the Western District of Washington. The first asked:

> Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, [RCW §] 61.24.005(2), if it never held the promissory note secured by the deed of trust?

*Id.* at 91. The Supreme Court construed the plain language and the purpose of the DTA as requiring that the beneficiary of a deed of trust be the party who holds the promissory note from the mortgagor. *Bain*, 175 Wn.2d at 110. MERS does not hold the promissory notes given to and generally resold by its members. The court's answer to the first certified question was, "[s]imply put, if MERS does not hold the note, it is not a lawful beneficiary." *Id.* at 89.

The second question asked was whether, if MERS was an unlawful beneficiary,

> [W]hat is the legal effect of Mortgage Electronic Registration Systems, Inc., acting as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

*Id.* at 91. The Supreme Court declined to answer the second question, explaining that resolution "depends on what actually occurred with the loans before us, and that evidence is not in the record." *Id.* at 114. The court did reject MERS's argument that at most, MERS would simply need to assign its interest in the deed of trust to the lender or perhaps the holder of the note. The problem, according to the court, was "it is unclear what rights, if any, [MERS] has to convey." *Id.* at 111.

The *Bain* decision has presented problems for foreclosure of deeds of trust like Ms. Weirich's, in which lenders designated MERS as a nominee or mortgagee of record. Because MERS does not hold the underlying promissory notes, banks who are assigned a "beneficial interest" in a deed of trust by MERS do not thereby acquire a beneficial interest within the meaning of the DTA nor are they able, legally, to appoint a successor trustee.

Division One of this court addressed whether infirmities with deed of trust interests and appointments traced to an unlawful beneficiary can be the basis for an action to set aside a completed trustee's sale in *Rucker v. NovaStar Mortgage, Inc.*, 177 Wn. App. 1, 311 P.3d 31 (2013). In that case, the borrowers and grantors of a deed of trust, relying on *Bain*, argued that because NovaStar, a purported beneficiary of the deed of trust, did not hold their promissory note, it could not be a beneficiary within the meaning

16

of the DTA; that it lacked the power to appoint the successor trustee who had proceeded with a nonjudicial foreclosure; and that the trustee's sale was therefore invalid. 177 Wn. App. at 14-15. Division One agreed with the borrowers that the actions of the improperly appointed trustee constituted a material violation of the DTA and that its sale of the property was therefore improper. It recognized that a vacation of the trustee's sale was a potentially available remedy. *Id.* at 17-18.

Turning to whether the borrowers waived their right to challenge the sale by failing to bring an action to restrain it, the court discussed *Albice*'s holding that "waiver is applicable 'only where it is equitable under the circumstances and where it serves the goals of the act.'" *Id.* at 18-19. Viewing the evidence in the light most favorable to the borrowers, the court pointed to the fact that one of the borrowers claimed to have been told by an employee of the trustee that the trustee's sale would be postponed. *Id.* at 8. Because there were genuine issues of material fact whether this false representation was made, and if so, whether the borrowers reasonably relied on it in failing to bring a lawsuit to restrain the sale, the court held that summary judgment had been improperly granted.

One month later, in *Bavand*, Division One applied similar reasoning to reverse, for the most part, trial court orders dismissing a postsale challenge to a trustee's sale. It pointed out that OneWest Bank, FSB, a self-proclaimed beneficiary at the time it appointed a successor trustee, relied for its authority on an assignment of the deed of trust that was executed the day *after* it had appointed the trustee. *Bavand*, 176 Wn. App. at

17

483. The court concluded that MERS could not cure the defective appointment of a trustee because it is not a proper beneficiary under the DTA. *Id.* at 488. It held the fact that the successor trustee's lack of authority was "a material procedural defect and not a mere technicality." *Id.* at 490.

In response to the argument by the bank and MERS that Ms. Bavand waived any claim by failing to restrain the sale under RCW 61.24.130, the court disagreed, although in this case it construed *Schroeder* as holding that waiver does not occur where the trustee's actions in a nonjudicial foreclosure are unlawful.

Both *Rucker* and *Bavand* support Mr. Merry's argument that his effort to invalidate a trustee's sale based on MERS-related violations of the DTA might not be waived by a failure to restrain a trustee's sale. But for reasons we turn to next, they do not provide germane or persuasive guidance on whether the trial court erred in applying waiver here.

> *We hold that waiver by failure to restrain a trustee's sale*
> *remains a defense to claimed DTA violations if applying waiver*
> *is not inequitable and is consistent with the purposes of the act.*

If *Bavand* reads *Schroeder* as holding that any lapse from strict compliance with the DTA immunizes an action to set aside a completed trustee's sale from the defense of waiver, then we disagree. The *Schroeder* decision never suggested that it was overruling or modifying the court's earlier decisions in *Plein* and *Albice*; it merely distinguished them. *Schroeder* presented an apparent flouting of the DTA. If Mr. Schroeder's property

18

was used principally for agricultural purposes, then the deed of trust he executed was never eligible for nonjudicial foreclosure. The case presented unique facts and the court resolved it on a unique basis:

> We emphasize the obvious. If Schroeder's land was agricultural, then not only did the trustee not have authority to proceed with an nonjudicial foreclosure, but the very statute on which the trustee relies to support its five-day notice requirement, RCW 61.24.130(2), is inapplicable.

177 Wn.2d at 111.

> Distinguishing *Plein*, the *Schroeder* court said:

> Nothing in *Plein* suggests that waiver might cause the deed of trust act to apply to transactions to which the deed of trust act does not apply. If Schroeder's 200 acres were used primarily for agricultural purposes, *Plein* is inapplicable.

*Id.* at 112. Our Supreme Court recently reiterated this distinguishing aspect of *Schroeder* in *Frizzell*, 179 Wn.2d at 311-12, stating that in *Schroeder*, "the statutory provisions for enjoining a nonjudicial foreclosure sale, including the waiver provision, were inapplicable."

It was in *Plein* that our Supreme Court first recognized the three elements[7] that give rise to what it characterized as a "waiver rule" that "appropriately effectuates [a] statutory directive." *Plein*, 149 Wn.2d at 229. Its source for the elements were decisions by this court, which had relied in turn on a law review comment by now-Professor, then

---

[7] Notice of the right to restrain the sale, knowledge of the defense, and failure to restrain the sale.

law student, Joseph Hoffmann: Joseph L. Hoffmann, Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*, 59 WASH. L. REV. 323 (1984).[8] Notably, the Court of Appeals decisions on which *Plein* relied included two decisions in which attempts to set aside a completed trustee's sale based on violations of the DTA were held to have been waived: *Koegel v. Prudential Mutual Savings Bank*, 51 Wn. App. 108, 114, 752 P.2d 385 (1988) and *Steward v. Good*, 51 Wn. App. 509, 515-17, 754 P.2d 150 (1988).

In *Koegel*, the original and amended notices of default served on the borrower and grantor incorrectly described the subject property, and the notice of sale was sent less than 30 days after the amended notice of default. 51 Wn. App. at 109. While the court discussed the duty of trustees to strictly comply with the DTA and the strict construction of the act's requirements in favor of the borrower, neither deterred the court from

---

[8] The Hoffmann law review comment has been cited in all of the following reported Washington decisions: *Cox*, 103 Wn.2d at 387; *Savings Bank of Puget Sound v. Mink*, 49 Wn. App. 204, 208, 741 P.2d 1043 (1987); *Glidden v. Municipal Authority of Tacoma*, 111 Wn.2d 341, 346, 758 P.2d 487 (1988); *Queen City Sav. & Loan Ass'n v. Mannhalt*, 111 Wn.2d 503, 508, 760 P.2d 350 (1988); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 115, 752 P.2d 385 (1988); *Steward v. Good*, 51 Wn. App. 509, 512, 754 P.2d 150 (1988); *Country Exp. Stores, Inc. v. Sims*, 87 Wn. App. 741, 751, 943 P.2d 374 (1997); *Plein*, 149 Wn.2d at 227; *Udall v. T.D. Escrow Servs., Inc.*, 132 Wn. App. 209, 302, 130 P.3d 908 (2006), *rev'd on other grounds by Udall v. T.D. Escrow Servs. Inc.*, 159 Wn.2d 903, 154 P.3d 882 (2007); *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 170, 189 P.3d 233 (2008); *Bain*, 175 Wn.2d at 94; *Schroeder*, 177 Wn.2d at 104 (2013); and *Mellon v. Regional Trustee Services Corp.*, 182 Wn. App. 476, 498, 334 P.3d 1120 (2014).

applying waiver. It held that a party should be required to establish prejudice in order to void a sale "where, as here, the trustee's error was a technical, formal error . . . and correctable." *Id.* at 113. In the case before it, "[t]he trustee's error was nonprejudicial and the debtor could have invoked judicial protection prior to the sale but failed to do so." *Id.*

In *Steward*, a successor trustee mailed a notice of default to the borrowers nine days before his appointment and failed to record the notice of sale 90 days before the actual sale. But the court endorsed *Koegel*'s holding that technical, formal, correctable errors must be prejudicial to justify setting aside a trustee's sale. *Steward*, 51 Wn. App. at 515. The court held, "Each of the alleged wrongdoings could or should have been known to them, therefore the Stewards should have brought a timely action to contest the default or restrain the sale. As the Stewards did not avail themselves of the statutory remedies available to them, they are precluded from doing so now." *Id.* at 517.

The Supreme Court in *Plein* "agree[d] that the waiver rule applied by the Court of Appeals in . . . *Steward*, *Koegel* and like cases appropriately effectuates the statutory directive that any objection to the trustee's sale is waived where presale remedies are not pursued." 149 Wn.2d at 229. The Supreme Court also cited to the following discussion in the law review comment on which the *Koegel* and *Steward* courts had relied, stating that the doctrine of waiver

21

should preclude an action by a party to set aside a completed trustee's sale whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale. In most cases, the statutory notices of foreclosure and trustee's sale should be sufficient to inform a party of the right to enjoin the sale. Furthermore, most substantive defenses to foreclosure arise early enough to permit the filing of a presale injunction action. Therefore, in most cases, a party's failure to bring a presale injunction action should be held to constitute a waiver of the right to contest the completed sale.

Hoffman, 59 WASH. L. REV. at 335 (cited by *Plein* at 149 Wn.2d at 227).

There is no textual basis in the DTA for concluding that its liberal allowance of

presale injunctions was not intended to include injunctions for failure by the trustee or

beneficiary to strictly comply with the DTA. RCW 61.24.130(1) speaks of the right to

restrain the sale "on any proper legal or equitable ground." The notice provided by RCW

61.24.040(1)(f)(IX) informs recipients that the opportunity to restrain the sale extends to

"[a]nyone having any objection to the sale on any grounds whatsoever" and that failure to

bring such a lawsuit may result in a waiver "of any proper grounds for invalidating

the . . . sale."

*Plein* discussed provisions of the DTA that signal its disfavor for attacks on

completed sales, explaining:

> The Deed of Trust Act discourages the use of postsale remedies in three ways. First, the Act does not expressly provide for any court actions to contest a completed trustee's sale. Second, the Act indicates that the right to contest a completed sale may be waived by a party's failure to bring a presale injunction action. Finally, the Act requires that the trustee's deed issued to the purchaser "recite the facts showing that the sale was

22

conducted in compliance with all of the requirements" of the Act and the particular deed of trust. This recital of statutory compliance is "prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value." [RCW 61.24.040(7).]

149 Wn.2d at 228 (alteration in original) (quoting Hoffman, 59 WASH. L. REV. at 329 (footnotes omitted)). At the same time, the DTA "manifests a legislative preference for the presale injunction remedy by reserving to . . . interested parties the right to restrain the trustee's sale on 'any proper ground.'" Hoffman, 59 WASH. L. REV. at 327.

This legislative preference for presale remedies is even more clear following the legislature's enactment in 2009 of a provision explicitly identifying claims for damages arising out of foreclosures of owner-occupied residential real property that are not waived by a failure to enjoin a foreclosure sale. LAWS OF 2009, ch. 292, § 6, *codified as* RCW 61.24.127. The legislature's primary purpose in enacting the new provision was to supersede the holding in *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 189 P.3d 233 (2008), which held that an action seeking damages for wrongful foreclosure is waived if the borrower does not seek to enjoin the foreclosure sale. *Frias*, 181 Wn.2d at 425.

Among the postsale claims for damages that the 2009 act recognizes is a borrower's or grantor's claim for damages "asserting . . . [f]ailure of the trustee to materially comply with the provisions of this chapter." But the nonwaived claim is subject to the limitation (among others) that the claim may not seek any remedy other

23

than monetary damages. RCW 61.24.127(2). Notably, while the legislature explicitly recognized that a grantor's or borrower's claim for *damages* for a material violation of the DTA could survive completion of the foreclosure sale, it did not explicitly recognize a grantor's or borrower's claim to set aside the sale for a material DTA violation as surviving the sale. Not only that, but it showed a general disapproval for the latter type of legal challenge by providing that a grantor or borrower hoping to recover postsale damages may not include any claim that would affect the validity or finality of the sale or operate to encumber or cloud title to the property.

Even after *Albice* and *Schroeder*, Washington law continues to support the application of waiver to individuals like Mr. Merry who, with knowledge of a material violation of the DTA, fail to restrain a sale—as long as courts heed *Albice*'s admonition that "we apply waiver only where it is equitable under the circumstances and where it serves the goals of the act." *Albice*, 174 Wn.2d at 570.[9]

---

[9] The Hoffmann comment suggests the following circumstances under which waiver should not apply:

> [B]ecause waiver can occur only when a party has actual or constructive knowledge of the right waived, a party should not be held to have waived the right to contest the completed sale if that party was not provided with the proper statutory notices or was justifiably unaware of a defense to foreclosure until after the sale was completed. In addition, a party who unsuccessfully attempted to enjoin the sale should not be held to have waived the right to contest the completed sale. Under such circumstances, an action to set aside the trustee's sale may be appropriate.

Hoffman, 59 WASH. L. REV. at 335-36 (footnote omitted).

24

>            *As a matter of law, there is nothing inequitable or inconsistent*
>            *with the purposes of the DTA in applying waiver to Mr. Merry.*

To conclude our analysis, we address why the trial court could summarily conclude that there was no reason *not* to apply the waiver rule. In *Frizzell*, our Supreme Court affirmed the summary judgment dismissal of a postsale challenge to a trustee's sale and in doing so, rejected an argument for exceptional treatment under the principles of *Albice* by examining the absence of evidence that waiver would be inequitable or inconsistent with the purposes of the DTA.

Mr. Merry's complaint alleged that Northwest Trustee lacked standing to act as trustee because it was appointed by MERS, an unlawful beneficiary. He alleged that Nationstar lacked standing to enforce the note because it was not the holder of the note, and finally that the note is unenforceable because it is a lost or stolen instrument. His prayer for relief asked that the court declare the Weirich-to-Countryside note lost or stolen and the deed of trust interest claimed by Nationstar to be unenforceable.

Mr. Merry's complaint did not identify any respect in which Countrywide's use of a deed of trust form that included MERS as a purported beneficiary and mortgagee harmed him. He did not identify how Bank of America's, Northwest Trustee's, or Nationstar's actions taken in an effort to foreclose the problematic MERS-inclusive deed of trust harmed him. Instead, he attempted to seize on what proves to have been Countrywide's mistake in identifying MERS as beneficiary as a basis for asking the

25

Chelan County Superior Court to treat the more than $235,000 owed by Ms. Weirich on a bona fide obligation as unenforceable, resulting in a priority windfall to him.

The *Bain* court was unable to determine the effect of MERS's identification as an unlawful beneficiary on the parties to the federal action due to insufficient information. But Justice Chambers' decision for the court signaled disapproval of the type of hypertechnical, inequitable result requested by Mr. Merry's complaint. The opinion states that "the equities of the situation would likely (though not necessarily in every case) require the court to deem that the real beneficiary is the lender whose interests were secured by the deed of trust or that lender's successors." *Bain*, 175 Wn.2d at 111. Responding to the argument of one of the federal plaintiffs, Kevin Selkowitz, that his obligation under his promissory note should be invalidated, the Supreme Court said, "[Mr. Selkowitz] offers no authority in his opening brief for the suggestion that listing an ineligible beneficiary on a deed of trust would render the deed void and entitle the borrower to quiet title." *Id.* at 112. Distinguishing a case cited by Mr. Selkowitz in which no mortgagee or obligee had been identified in a security agreement, the *Bain* court stated "the deeds of trust before us name all necessary parties and more." *Id.*

MERS had argued in *Bain* the violation of the deed of trust act "'should not result in a void deed of trust, both legally and from a public policy standpoint,'" and the *Bain* court answered, "[W]e tend to agree." *Id.* at 114. But it noted the insufficient record.

No. 32474-5-III
*Merry v. NW Trustee Services*


The trial court in this case had before it no evidence that Ms. Weirich's $235,000-plus obligation was not due and owing. It had before it no evidence that Nationstar was not acting as the agent for a successor to the original lender. It had before it only Mr. Merry's identification of formal, technical, nonprejudicial violations of the DTA with no suggestion that they could not have been corrected if timely raised. The trial court appropriately applied waiver.

Affirmed.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Brown, .J.

27