# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID AND ROBBIN MANNING, husband and wife, | ) ) ) | NO. 73908-5-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"); THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK, SOLELY AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2004-5 (A NEW YORK REMIC TRUST), MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-5; REGIONAL TRUSTEE SERVICES PACIFIC, INC. ("RTS"); RESIDENTIAL CREDIT SOLUTIONS, INC.; JOHN DOES NOS. 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: October 31, 2016 |

LEACH, J. — David and Robbin Manning appeal the trial court's dismissal of their lawsuit against successive holders of their promissory note, the designated beneficiary of their deed of trust, and the successor trustee. They challenge the trial court's decision that the four-year statute of limitations barred their Consumer Protection Act (CPA)[1] claim and that they waived other claims.

---

[1] Ch. 19.86 RCW.

They contend that the defendants violated the deeds of trust act (DTA)[2] by foreclosing without holding a "negotiable instrument." Because the Mannings did not use the DTA's procedure for restraining the sale and allege only narrow, technical violations of the DTA, they waived all their claims except the CPA and fraud claims. Because the entity that appointed the successor trustee also held the promissory note, that trustee had authority to foreclose. Because the Mannings' CPA claim accrued more than four years before they brought suit, the statute of limitations barred their CPA claim. And because the Mannings do not contest the trial court's ruling that they did not plead their fraud claim with specificity, they have abandoned that claim. We affirm.

## FACTS

In 2004, David and Robbin Manning borrowed money from Countrywide Home Loans to finance their purchase of a house on Lopez Island. They signed a promissory note and executed a deed of trust securing it. The deed of trust named Mortgage Electronic Registration Systems Inc. (MERS) as the beneficiary, "acting solely as a nominee for [Countrywide] and [Countrywide]'s successors and assigns." The deed of trust designated LS Title of Washington the trustee.

---

[2] Ch. 61.24 RCW.

The following occurred after the Mannings signed their note. The Bank of New York (BNY) acquired the note in April 2004. MERS assigned the deed of trust to BNY in March 2012. The Mannings defaulted on the loan in July 2012. Residential Credit Solutions obtained possession of the note in 2013 for purposes of servicing the Mannings' loan for BNY.[3] Residential Credit issued a notice of default in January 2014. In May 2014, BNY appointed Residential Trustee Services as successor trustee. Trustee Services recorded a notice of trustee's sale in September 2014.

In January 2015, the Mannings sued MERS, BNY, Trustee Services, and Residential Credit, claiming fraud, slander of title, and violations of the CPA and seeking damages, declaratory and injunctive relief, and to quiet title. They did not use the DTA procedure to ask the trial court to restrain the trustee's sale.[4] Trustee Services sold the house on January 15, 2015.

The defendants moved to dismiss the Mannings' complaint for failure to state a claim upon which relief could be granted. The trial court granted the motion. It decided that the Mannings waived most of their claims by not using the DTA restraint procedure. It also dismissed their two unwaived claims, ruling

---

[3] As of April 2015, Residential Credit held the note "on behalf of the Bank of New York."

[4] See RCW 61.24.130.

-3-

that the four-year statute of limitations barred their CPA claim and that they did not plead fraud with enough particularity.[5] The Mannings appeal.

## STANDARD OF REVIEW

The parties' briefs raise two issues relevant to the standard of review. First, the Mannings challenge the trial court's application of the CR 12(b)(6) standard. They point to arguments the defendants made in their motion to dismiss urging the trial court to apply the federal courts' pleading standard, which is stricter than Washington's.[6] The record contains no indication that the trial court applied that standard, nor do the Mannings explain how it would change the outcome of this appeal. The Mannings also contend that the defendants "urged the trial court to ignore a leading case in California" regarding borrowers' standing to challenge assignments of loan documents. They do not, however, explain how those developments in California case law should affect this court's consideration of the issues in this appeal. We decline to speculate.

Second, the trial court's consideration of facts outside the pleadings converted its decision to one for summary judgment. Generally, in considering a CR 12(b)(6) motion to dismiss, "the trial court may consider only the allegations contained in the complaint and may not go beyond the face of the pleadings."[7] It

---

[5] See CR 9(b).

[6] See Handlin v. On-Site Manager Inc., 187 Wn. App. 841, 845, 351 P.3d 226 (2015).

[7] Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 725-26, 189 P.3d 168 (2008).

may also take judicial notice of certain facts "'not subject to reasonable dispute.'"[8]

But when the trial court considers other "matters outside the pleadings," such as declarations and attached documents, it converts a motion to dismiss for failure to state a claim to a motion for summary judgment.[9]

Here, the defendants supported their motion to dismiss with a request for judicial notice containing several documents. These included a Residential Credit officer's declaration describing the note's ownership and possession history with the original note attached, the deed of trust, the assignment of the deed from MERS to BNY, BNY's appointment of Trustee Services as successor trustee, the notice of default from Residential Credit, the notice of trustee's sale from Trustee Services, and the trustee's deed.

The trial court did not exclude those documents. Rather, it indicated in its decision letter that it reviewed the defendants' request for judicial notice and its order states that it reviewed "the files contained in this matter." Under CR 12(b),

---

[8] Rodriguez, 144 Wn. App. at 725-26 (quoting ER 201(b)). These include facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b). The court may also take notice of documents that are attached to the complaint or that the complaint alleges the contents of. Rodriguez, 144 Wn. App. at 726.

[9] CR 12(b); Perrin v. Stensland, 158 Wn. App. 185, 192, 240 P.3d 1189 (2010). CR 12(b) provides that where

> matters outside the pleading are presented to and not excluded
> by the court, the motion shall be treated as one for summary
> judgment and disposed of as provided in rule 56, and all parties
> shall be given reasonable opportunity to present all material
> made pertinent to such a motion by rule 56.

this converted the trial court's decision to one for summary judgment.[10] In their response to the motion to dismiss, the Mannings made arguments based on information from those documents. They did not ask for more time to present their own evidence.[11] We thus review the trial court's summary judgment decision de novo, asking whether the evidence creates a genuine issue of material fact when viewed in the light most favorable to the nonmoving party.[12]

## ANALYSIS

### Waiver

The Mannings dispute the trial court's conclusion that they waived most of their claims by failing to use the DTA procedure to stop the trustee's sale. We agree with the trial court that only the Mannings' fraud and CPA claims survive waiver.

The DTA "creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale."[13] The act

---

[10] See Perrin, 158 Wn. App. at 192. While the trial court may consider documents whose contents a complaint alleges without converting its ruling to a summary judgment, this rule does not apply where the parties dispute those contents, as the Mannings do here. See Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015).

[11] See CR 56(f).

[12] Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011); CR 56(c).

[13] Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012).

has three goals: an efficient and inexpensive process, adequate opportunities for parties to prevent wrongful foreclosure, and stability of land titles.[14]

To further these goals, RCW 61.24.130 provides a procedure for stopping a trustee's sale.[15] The DTA requires borrowers to use this procedure or risk waiving objections to the sale and claims arising out of the underlying obligation.[16] Courts may apply waiver where it "is equitable under the circumstances and . . . serves the goals of the act."[17] The borrower must have "(1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale."[18] RCW 61.24.127(1) preserves four types of claim that a plaintiff "may not" waive by failing to use the DTA restraint procedure. These include claims for fraud and for CPA violations.

Here, the trial court ruled that "to the extent Plaintiffs' claims identify only formal technical violations of the DTA, with no suggestion that any such violations could not have been corrected if they had been timely raised under RCW 61.24.130, Plaintiffs have waived their right to raise them." We agree.

---

[14] Albice, 174 Wn.2d at 567.
[15] Plein v. Lackey, 149 Wn.2d 214, 225, 67 P.3d 1061 (2003).
[16] Plein, 149 Wn.2d at 227; Brown v. Household Realty Corp., 146 Wn. App. 157, 169, 189 P.3d 233 (2008); RCW 61.24.040(1)(f)(IX).
[17] Albice, 174 Wn.2d at 570.
[18] Plein, 149 Wn.2d at 227.

The Mannings do not contest that they received notice of their right to enjoin the sale, knew of the defenses to foreclosure they now assert, and did not bring an action to stop the sale as authorized by the DTA.[19] They assert that applying waiver here would be inequitable. They claim that unlike the "technical, formal, likely correctable and nonprejudicial violations of the DTA" described in a Division Three opinion the trial court cited, Merry v. Northwest Trustee Services, Inc.,[20] the violations they allege are "gross violations."[21] They offer no support for this distinction. Like the plaintiffs in Merry, the Mannings based their claims on a deed of trust's designation of MERS as beneficiary and its assignment of its interest to a company that later appointed a successor trustee.[22] Division Three noted that the Supreme Court has "signaled disapproval of the type of hypertechnical, inequitable result requested by Mr. Merry's complaint."[23] The Mannings' claims fit this description. As in Merry, waiver is not inequitable here.

---

[19] Plein, 149 Wn.2d at 227.

[20] 188 Wn. App. 174, 177, 352 P.3d 830 (2015).

[21] The Mannings mischaracterize the trial court's decision as acknowledging that the defendants violated the DTA. The trial court instead indicated that even if the defendants had violated the DTA, the Mannings waived their claims.

[22] See Merry, 188 Wn. App. at 183-84.

[23] Merry, 188 Wn. App. at 196; see Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 111, 285 P.3d 34 (2012).

The Mannings thus waived claims that RCW 61.24.127(1) does not preserve.[24] That provision saves only their CPA and fraud claims and, to the extent made, DTA claims against the trustee.

Authority To Foreclose

The Mannings contend that the defendants lacked authority to foreclose because MERS could not assign the deed of trust. We disagree.

A trustee must be properly appointed to initiate foreclosure proceedings under the DTA.[25] An entity obtains the authority to appoint a successor trustee from possession of the note, not by an assignment of the deed of trust.[26]

That MERS lacked authority to assign the deed of trust does not matter because MERS did not appoint the successor trustee and the entity that did— BNY—had the authority to do so. The record shows that possession of the note passed from Countrywide to BNY in 2004 and from BNY to Residential Credit in 2013 to hold on behalf of BNY. BNY appointed Trustee Services as successor trustee in 2014. BNY's power to do so came from its status as holder of the note

---

[24] See Brown, 146 Wn. App. at 169. These include their slander of title claim and forms of relief they requested other than damages, including injunctive relief, declaratory relief, and quiet title.

[25] Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 486, 309 P.3d 636 (2013).

[26] McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 228-29, 370 P.3d 25 (2016); Bain, 175 Wn.2d at 89 ("[O]nly the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property.").

through its agent, Residential Credit, and not MERS's assignment of the deed of trust.[27] Trustee Services was thus properly appointed. The Mannings did not create a genuine issue of material fact about Trustee Services' authority to foreclose on their house.

The Mannings' argument that Trustee Services lacked authority to foreclose because the promissory note is not a "negotiable instrument" lacks merit.

The Washington Uniform Commercial Code defines a "negotiable instrument" as an "unconditional promise or order to pay a fixed amount of money."[28]

> [A] promise or order to pay is unconditional unless it contains an express condition to payment and states that (1) the promise or order to pay is subject to or governed by another writing or (2) rights or obligations with respect to the promise or order to pay are stated in another writing.[29]

The Mannings contend that the note is not a "negotiable instrument," and thus no defendant was the "holder of an instrument," and thus any foreclosure actions any defendant took violated the DTA.[30] They rely on <u>Anderson v.</u>

---

[27] See <u>McAfee</u>, 193 Wn. App. at 228-29. A note holder can possess a note "directly or through an agent." RCWA 62A.3-201 U.C.C. cmt. 1.

[28] RCW 62A.3-104(a).

[29] <u>Alpacas of Am., LLC v. Groome</u>, 179 Wn. App. 391, 396-97, 317 P.3d 1103 (2014); <u>see</u> RCW 62A.3-106(a).

[30] <u>See</u> RCW 61.24.005(2) ("'Beneficiary' means the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation."); RCW

Hoard,[31] a case that predates the DTA, in which the Supreme Court held a note to be nonnegotiable. That note provided for the lender to apply payments first to interest, then "to the payment, at the option of the holder, of such advances as the holder may have made for taxes, assessments or insurance premiums and other charges on any property mortgaged or pledged to secure this note," and only then to principal.[32] The Mannings claim that their note likewise is not an unconditional promise to pay and is nonnegotiable because it does not include a fixed amount of principal and contains several material conditions, making uncertain the amount due.

The Mannings are wrong. The promissory note states the principal amount is $495,000.00 and fixes the annual interest rate at 5.875 percent. It requires monthly payments of $2,928.11 and provides for a 5 percent charge on overdue payments. Unlike the note in Anderson, the Mannings' note does not provide for the borrowers to reimburse the holder for taxes and other charges "at the option of the holder."[33] Thus, the Mannings did not make a conditional promise to pay an uncertain sum.[34] The note is a negotiable instrument.

---

62A.3-104(b) (defining "instrument" as "a negotiable instrument"); 62A.3-104(a) (defining "negotiable instrument").
[31] 63 Wn.2d 290, 293-94, 387 P.2d 73 (1963).
[32] Anderson, 63 Wn.2d at 291.
[33] Anderson, 63 Wn.2d at 291, 293.
[34] See Anderson, 63 Wn.2d at 293.

CPA Claim

Next, the Mannings challenge dismissal of their CPA claim. The trial court correctly decided that the statute of limitations barred this claim.

RCW 61.24.127(2)(a) provides that even when RCW 61.24.127(1) prevents a claim from being waived, the plaintiff must bring the claim within two years of the trustee's sale and within the specific statute of limitations for the type of claim. For a CPA claim, that period is four years.[35] Whether the statute of limitations barred the Mannings' claim thus depends on whether their claim accrued within four years of the filing of their complaint in January 2015.

In general, "'[a] cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief.'"[36] This occurs "'when the plaintiff can establish each element of the action.'"[37] The discovery rule is an exception to this general rule. Courts apply it, as a matter of judicial policy, when "'injured parties do not, or cannot, know they have been injured.'"[38] Where it applies, "'a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for

_____

[35] RCW 19.86.120.
[36] Shepard v. Holmes, 185 Wn. App. 730, 739, 345 P.3d 786 (2014) (alteration in original) (quoting O'Neil v. Estate of Murtha, 89 Wn. App. 67, 69-70, 947 P.2d 1252 (1997)).
[37] Shepard, 185 Wn. App. at 739 (quoting Hudson v. Condon, 101 Wn. App. 866, 874, 6 P.3d 615 (2000)).
[38] Shepard, 185 Wn. App. at 739 (quoting In re Estates of Hibbard, 118 Wn.2d 737, 744-45, 826 P.2d 690 (1992)).

-12-

the cause of action.'"[39] When that occurred is normally a fact question.[40] But a court may infer actual discovery where the claim is based on documents in the public record.[41]

Here, the Mannings' CPA claim accrued more than four years before the Mannings sued. It accrued when they knew or had reason to know of facts supporting every element of their claim.[42] The Mannings' claim thus accrued when they were first injured since at that point they knew of facts supporting every element of their CPA claim.[43]

The parties disagree on when the Mannings first knew or should have known they were injured. The defendants assert that the Mannings' CPA claims stem solely from the deed of trust naming MERS as beneficiary and thus accrued when the deed of trust was recorded in 2004, giving the Mannings constructive notice of any claims based on it. The Mannings contend their cause of action did

---

[39] Shepard, 185 Wn. App. at 739 (quoting Green v. Am. Pharm. Co., 86 Wn. App. 63, 66, 935 P.2d 652 (1997)).

[40] Samuelson v. Cmty. Coll. Dist. No. 2, 75 Wn. App. 340, 346, 877 P.2d 734 (1994).

[41] See Shepard, 185 Wn. App. at 742 (inferring actual discovery of facts constituting fraud).

[42] See Green, 86 Wn. App. at 66.

[43] A plaintiff can satisfy the injury element by showing that the plaintiff's "'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 57, 204 P.3d 885 (2009) (quoting Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). This can include "[i]nvestigative expenses, taking time off from work, travel expenses, and attorney fees." Walker v. Quality Loan Serv. Corp. of Wash., 176 Wn. App. 294, 320, 308 P.3d 716 (2013).

not accrue until after the defendants sought nonjudicial foreclosure in 2014 because until that time the defendants were "strangers to the Mannings' loan obligations." They contend the "unfair and deceptive acts" that supports the CPA claim was not the deed of trust itself but foreclosure based on "rogue documents" that include the deed of trust.[44]

Neither party is correct. The test the defendants propose would start the statute of limitations for CPA claims alleging illegal loan documents whenever those documents are recorded. This rule is too broad. "[T]he mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury."[45] Thus, while the defendants are correct that the Mannings had constructive notice of the allegedly improper deed of trust when it was recorded in 2004, the Mannings can rely on the assignment of MERS in the deed only for the "unfair or deceptive acts or practices" element of their CPA claim, not the injury element.[46]

While the Mannings' complaint and briefing do not make clear when they were first injured,[47] they base their CPA claim on at least one injury that they necessarily knew about before 2011. They assert that because "there has been

---

[44] See Perez v. U.S. Bank, No. 2:15-CV-0114-TOR, 2016 WL 792420, at *4 (E.D. Wash. Feb. 29, 2016) (court order) ("Plaintiffs' CPA claims accrued and the statute of limitations began to run in 2013, when Plaintiffs[ ] allege their injury occurred, namely when U.S. Bank foreclosed upon their property.").

[45] Bain, 175 Wn.2d at 120.

[46] See Bain, 175 Wn.2d at 116, 119-20.

[47] The Mannings' brief alludes cursorily to investigation expenses, time taken off from work, and travel expenses, but their complaint did not allege these injuries, let alone attach a date to them.

no full disclosure of what entity, if any, actually provided funds to the plaintiffs," none of the defendants were entitled to receive payments from them. The Mannings would thus have been injured when their first payment was received. The record does not show when that happened, but this court can infer, given the promissory note's requirement of monthly payments and a Residential Credit officer's declaration that the Mannings defaulted in 2012, that the Mannings made payments well before 2011.[48] Thus, the trial court was correct that the four-year statute of limitations had run when the Mannings filed their complaint in January 2015.

Fraud

Finally, the Mannings do not contest the trial court's finding that they did not plead fraud with enough particularity to survive a motion to dismiss. They have thus abandoned any challenge to that finding.[49]

CONCLUSION

Because the Mannings did not use the DTA procedure for stopping the trustee's sale, they waived all claims except those brought under the CPA or for fraud. Because BNY held the note when it appointed Trustee Services, Trustee

---

[48] The Mannings also assert that the deed of trust was illegal and void and placed a cloud on their title as soon as it was recorded in 2004. But they do not appear to rely on this injury for their CPA claim.

[49] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that an appellant waives an issue by failing to argue it in his opening brief).

Services had authority to foreclose regardless of MERS's attempted assignment of the deed of trust. Because the Mannings became aware of every element of their CPA claim more than four years before filing suit, the statute of limitations barred that claim. And because the Mannings do not challenge the trial court's dismissal of their fraud claim for insufficient pleading, they have conceded that issue. Accordingly, we affirm.

Leach, J.

WE CONCUR:

Cox, J.

Becker, J.